Sandra Kaye GARDNER, Appellant,

v.

BENEFITS COMMUNICATIONS
CORPORATION, et al.,
Appellees.

No. 98–7054.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 13, 1999.

Decided Feb. 23, 1999.

Richard A. Salzman argued the cause for appellant. With him on the briefs was Douglas B. Huron.

John M. Husband argued the cause for appellees. With him on the brief were Brian M. Mumaugh, Anthony Herman and Christine L. Kurek.

Before: EDWARDS, Chief Judge, WILLIAMS and HENDERSON, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Almost eight years ago, Sandra Kaye Gardner filed suit against her employer, Benefits Communications Corporation ("BCC"), as well as against several other institutional and individual defendants, asserting statutory claims of employment discrimination and retaliation. The District Court initially ordered Gardner to arbitrate her claims, on the assumption that her registration with the National Association of Securities Dealers ("NASD"), which was completed as a condition of Gardner's employment with BCC, required Gardner to arbitrate claims of the sort at issue in this case. Because the District Court refused to certify an appeal to this court on that issue, this appeal represents the first opportunity that Gardner has had to challenge the District Court's order compelling arbitration. Moreover, because the arbitration has already occurred, Gardner also now challenges the propriety of the arbitration award.

This litigation has languished far longer than necessary; it is therefore regrettable that our disposition will prolong this case even further. This result is unavoidable, however, because Gardner's claims against BCC are not subject to mandatory arbitration. If all of the original defendants remained as parties to this lawsuit, we might face two difficult questions: whether a fair reading of Gardner's NASD registration indicates her agreement to submit the instant claims to arbitration, and, if so, whether arbitration lawfully may be compelled pursuant to the purported agreement. These are moot questions, however, for Gardner has agreed to dismiss all defendants save BCC. With BCC as the sole defendant, there is no doubt that Gardner is not required to arbitrate her claims in lieu of having the case heard in District Court.

Accordingly, we remand this case to the District Court for further proceedings to address the merits of Gardner's claims against BCC. In light of this disposition, it is unnecessary to resolve Gardner's additional claim that the disputed arbitration award should be set aside under *Cole v. Burns International Security Services,* 105 F.3d 1465 (D.C.Cir.1997).

## I. BACKGROUND

BCC provides plan enrollment services for consumers of group and individual life insurance plans. The company is a wholly owned subsidiary of the Great–West Life Assurance Company ("Great–West"), a Canadian-based insurance company that sells group and individual life, health, and annuity products. BCC is also a director of BenefitsCorp Equities, Inc. ("BCE"), a limited broker-dealer in the annuity and life products market. BCC is not a member of NASD; however, both Great–West and BCE are members of NASD.

Gardner began working for BCC in the fall of 1989 as an Employer Sponsored Specialist. In this position, Gardner sold retirement-related insurance products and securities to participants in employer-sponsored pension plans. Because Gardner sold securities for BCC through BCE, she was required to register as an agent with NASD as a condition of her employ-

ment. Accordingly, on September 11, 1989, she executed a Uniform Application for Securities Industry Registration or Transfer, widely known as a "U–4 form," to satisfy this requirement. *See* Joint Appendix ("J.A.") 58–61.

For most of Gardner's tenure at BCC, her immediate supervisor was Craig Wolpert. According to Gardner, Wolpert did not like her and sought to get rid of her because she was "a big woman." Brief for Appellant at 5. Gardner alleges that she complained of Wolpert's discriminatory treatment to the upper management of her company, but Wolpert was never reprimanded for his behavior. *See* Brief for Appellant at 6; Complaint ¶ 11, *reprinted in* J.A. 25. Gardner additionally claims that Wolpert not only continued his discriminatory treatment after her internal complaint, but also launched a campaign of retaliation in response to it. *See Complaint* ¶ 12, *reprinted in* J.A. 25.

Due to Wolpert's allegedly discriminatory treatment and abuse, Gardner asserts she was forced into treatment for anxiety and depression. On October 11, 1990, Gardner suffered a panic attack and asked for sick leave due to her illness. Instead of granting Gardner's request, Wolpert placed Gardner on disciplinary probation and sought a replacement for her. *See* Memorandum from Craig Wolpert to Kaye Gardner (Oct. 11, 1990), *reprinted in* J.A. 128; Advertisement, WASHINGTON POST, Oct. 14, 1990, at K33, *reprinted in* J.A. 129. Gardner went on extended medical leave, and finally resigned from BCC in early 1991. *See* Brief for Appellant at 7; Complaint ¶¶ 13–14, *reprinted in* J.A. 25– 26. Thereafter, she was employed by Liberty Securities, but at a much lower salary. In 1991, 1992, and 1993, Gardner earned $19,739, $15,823, and $25,000, respectively, compared ·to the roughly $53,500 she had earned at BCC. *See* J.A. 155.

In April 1991, Gardner filed suit in District Court against BCC, Great–West, and BCE, as well as against corporate officers Wolpert and Charles Nelson, Wolpert's direct supervisor, asserting claims of employment discrimination and unlawful retaliation under the D.C. Human Rights Act (the "Human Rights Act"), D.C.CODE ANN. §§ 1–2501 to 1–2557 (1981 & Supp.1998). *See* Complaint ¶¶ 1, 6, *reprinted in* J.A. 21–22, 23. She alleged that she had been subjected to sex discrimination and unlawful retaliation by Wolpert, and that the other defendants either knew or should have known of Wolpert's actions, but nevertheless allowed it to continue. *See id.* ¶¶ 9–10, 12, 15, *reprinted in* J.A. 24–26.

In response to Gardner's complaint, the defendants, all represented by the same counsel, moved to compel arbitration of the case, arguing that Gardner had agreed to arbitrate this type of dispute when she registered with the NASD. Gardner opposed this motion, but the District Court, relying on *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), found that the NASD Code of Arbitration Procedure ("NASD Code") mandated arbitration of this dispute. *See Gardner v. Benefits Communications Corp.*, No. Civ. A. 91– 0536 JGP, 1991 WL 294564 (D.D.C. Dec.31, 1991) (memorandum), *reprinted in* J.A. 8–9. Gardner then sought reconsideration of the referral to arbitration from the District Court, or, in the alternative, certification for interlocutory appeal. The District Court denied this motion, and Gardner was forced to go to arbitration. *See Gardner v. Benefits Communications Corp.*, No. 91–0536 (D.D.C. June 16, 1992) (memorandum order), *reprinted in* J.A. 11–13.

On January 7, 1993, Gardner submitted her claims to NASD. A hearing was held before a panel of three arbitrators on January 27 through February 1, 1994. On April 11, 1994, the panel entered a decision in favor of Gardner, but awarded her only $15,000. *See* Gardner Arbitration Award, *reprinted in* J.A. 110–15. The arbitration panel also assessed $3,000 in "forum fees" against Gardner. *See id.* at 113.

On April 28, 1994, only seventeen days after the panel decision was issued, Gardner promptly sought a new trial date from the District Court, arguing that the court should reconsider its prior ruling compelling arbitration, that the arbitration award was not final and did not preclude a *de novo* trial of Gardner's claims, and that the arbitrators had erred in their award. However, it was almost four years before the District Court acted on Gardner's motion. In fact, on January 20, 1995, about nine months after moving for a trial date, Gardner returned to the District Court to plead for a final determination in her case; this plea fell on deaf ears, for over three more years passed before the District Court ruled on Gardner's motion. Finally, on March 12, 1998, the District Court denied Gardner's request for a new trial, but modified the NASD award in two ways. *See Gardner v. Benefits Communications Corp.*, No. 91–0536 (D.D.C. Mar.12, 1998) (order), *reprinted in* J.A. 20. First, the trial court found that the assessment of "forum fees" against Gardner was unlawful under *Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C.Cir.1997); accordingly, the assessment of $3,000 against Gardner in forum fees was struck from the NASD award. *See Gardner v. Benefits Communications Corp.*, No. 91–0536 (D.D.C. Mar.12, 1998) (memorandum), *reprinted in* J.A. 17. In addition, the trial court found that Gardner was the prevailing party and, thus, was entitled to attorney's fees and costs. *See* J.A. 17–18. The District Court, however, stayed the petition for attorney's fees pending her appeal to this court.

## II. ANALYSIS

■ On appeal, Gardner argues, *inter alia*, that it was improper for the District Court to compel arbitration of her statutory discrimination claims against BCC. In order to determine the propriety of this decision, we must examine the language of Gardner's U–4 form as well as the language of the NASD Code and By–Laws.

The fifth paragraph of the U–4 form signed by Gardner states, "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register." J.A. 61. Gardner registered only with NASD, and thus we must look to NASD's rules and by-laws in effect when Gardner filed suit to determine whether her discrimination claims were subject to the arbitration clause. *See Seus v. John Nuveen & Co.*, 146 F.3d 175, 187 (3d Cir.1998) ("Most courts have found that the Form U–4 compliance clause obligates a registrant to comply with the NASD Arbitration Code as it existed at the time she filed suit."). Accordingly, all references herein to NASD rules and by-laws are to those that were in effect in 1991.

Section 1 of the NASD Code describes those disputes that are eligible for arbitration:

> This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section 1(a)(3) of the By–Laws of the National Association of Securities Dealers, Inc., (the Association) for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company:
>
> (1) between or among members;
>
> (2) between or among members and public customers, or others; and
>
> (3) between or among members; registered clearing agencies with which the Association has entered into an agreement to utilize the Association's arbitration facilities and procedures; and participants, pledges, or other persons using the facilities of a registered clearing agency, as these terms are

defined under the rules of such a registered clearing agency.

In addition, § 8 of the Code provides that the following disputes *must* be submitted to arbitration:

(a) Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member; and,

(3) a person associated with a member against a person associated with a member.

Appellees argue that §§ 1 and 8 of the NASD Code mandate arbitration of Gardner's claims, because both defendants BCE and Great–West are NASD members. Under § 1(2), disputes between members and "others" *may* be arbitrated, and § 8(a)(2) *requires* arbitration of disputes between a member and "a person associated with a member." The NASD By–Laws, Art. I, ¶ 1101(m), defines "person associated with a member" or "associated person of a member" as:

every sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member, whether or not any such person is registered or exempt from registration with the [NASD] pursuant to [the NASD By–Laws].

The defendants argue that Gardner qualifies as a "person associated with a member" and an "other[ ]," and thus, this matter was properly arbitrated.

The circuits that have considered the issue have split over whether and on what terms these provisions require arbitration of employment disputes between a member-employer and a registered employee. *See generally Thomas James Assocs., Inc. v. Jameson,* 102 F.3d 60, 64 (2d Cir.1996) (describing the various interpretations of these provisions by the different circuits). *See, e.g., Farrand v. Lutheran Bhd.,* 993 F.2d 1253, 1254–55 (7th Cir.1993) (finding that an employment dispute was not arbitrable, because although § 1's three subsections ((1)-(3)) qualified the phrase "arising out of or in connection with the business of any member of the [NASD]," an employee suing an member-employer was not an "other[ ]" within the meaning of § 1(2)); *Kidd v. Equitable Life Assurance Soc'y of the United States,* 32 F.3d 516, 519 (11th Cir.1994) (holding that an employment dispute must be arbitrated, because § 1 "requires arbitration for any dispute connected to an NASD member's business, except for disputes involving the insurance business of an NASD member that are (1) between NASD members or (2) between NASD members and public customers or others"); *Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 798–99 (10th Cir.1995) (finding an employment dispute arbitrable, because the term "others" in § 1(2) necessarily encompassed "associated persons" as used in § 8, and therefore included an aggrieved employee).

It is unnecessary for us lend our voice to this controversy over the meaning of §§ 1 and 8 of the NASD Code, for Gardner has agreed to dismiss all defendants save BCC. With this dismissal it becomes indisputably clear that the real dispute in this case is *not* between a member-employer and a registered employee. Rather, the dispute here is between a non-member employer, BCC, and its registered employee, Gardner; and, as we will explain below,

this difference is determinative of the issue at hand.

This renovation of the case is hardly surprising, given its true nature. Because the Human Rights Act defines "employer" very broadly, *see* D.C.Code Ann. § 1–2502(10), Gardner joined BCE, Great–West, Wolpert, and Nelson as codefendants to this action out of an abundance of caution. Yet, these defendants are in no sense necessary parties to the lawsuit. The dispute here is and always has been between Gardner and BCC. Indeed, appellees conceded as much in their motion papers in the District Court, where they stated that this "action arises out of Gardner's employment with BCC, her acceptance of that employment, and her resulting allegations that she was treated discriminatorily on account of her sex." *See* Memorandum Brief in Support of Defendant's Motion to Compel Arbitration at 8, *reprinted in* J.A. 39; *see also id.* at 2, *reprinted in* J.A. 33 ("Gardner filed her complaint and has raised claims relating to her employment with [BCC].").  Gardner also has made it clear that her claims are principally focused on the actions of BCC.  *See, e.g.,* Plaintiff's Opposition to Motion to Compel Arbitration at 5, *reprinted in* J.A. 68 ("[P]laintiff was employed by BCC, paid by BCC, received her accounts from BCC and was subjected to discriminatory treatment from her two immediate supervisors, both of whom were employees of BCC.").  In other words, Gardner's agreement to dismiss all defendants except BCC merely shapes the litigation in a way that comports with the reality of what is genuinely at stake in this case.

With this turn of events, it is unnecessary for us to determine the reach of §§ 1 and 8 of the NASD Code.  It is also unnecessary to decide whether the purported mandatory arbitration clauses under the NASD Code, or the disputed arbitration award in this case, transgress the commands of *Cole v. Burns International Security Services,* 105 F.3d 1465 (D.C.Cir.

1997).  Our avoidance of these knotty issues is additionally fortuitous in light of the fact that NASD recently has amended its arbitration procedures to provide that statutory employment disputes are no longer required to be arbitrated in any circumstances.  *See NASD Notice to Members 98–56: SEC Approves Rule Change Regarding Arbitration of Statutory Employment Disputes; Effective January 1, 1999* (visited Feb. 1, 1999) <http://www.nasd.com/notices/9856ntm.txt>; Reply Brief for Appellant at 6 n.4.

■  Our authority to accept Gardner's agreement to dismiss all defendants except BCC comes from well established precedent.  Federal Rule of Civil Procedure 21 provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."  Although this rule literally pertains only to the district courts, *see* Fed. R.Civ.P. 1, the Supreme Court has held that "the policies informing Rule 21 may apply equally to the courts of appeals."*Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).  This appellate power "long predates the enactment of the Federal Rules."  *Id.* at 834, 109 S.Ct. 2218.  Indeed, Justice Story, sitting as Circuit Justice, wrote that " '[t]here is ... in the nature of an appellate jurisdiction, nothing which forbids the granting of amendments,' " and that "this ... power [derived] from 'the course of the common law,' " which afforded the higher court the same amendment power as the lower one.  *Id.* (quoting *Anonymous,* 1 F.Cas. 996, 997 (C.C.D.Mass. 1812)) (alteration in original); *see also Mullaney v. Anderson,* 342 U.S. 415, 416–17, 72 S.Ct. 428, 96 L.Ed. 458 (1952) (granting union's motion to add two of its members as parties in order to avoid deciding standing issue); *Balgowan v. New Jersey,* 115 F.3d 214, 216–17 (3d Cir. 1997) (allowing a group of engineers who sued the New Jersey Department of Labor

for violations of the Fair Labor Standards Act to add Department's Commissioner as a party to suit while case was on appeal, because court did not have jurisdiction over engineers' claim against state for monetary relief).

This case falls within the compass of those decisions in which the appellate power to add or dismiss parties may be exercised. First, it is clear that this dispute always has been between Gardner and BCC, and Gardner has indicated to this court that she is willing to dismiss the four unnecessary defendants. *See* Reply Brief for Appellant at 7–8 n.6; Appellant's Response to Court's Order (Jan. 14, 1998). These are compelling considerations, especially given the absence of any real prejudice to other parties.

■ Second, the absence of prejudice cannot seriously be challenged. BCE, Great–West, Wolpert, and Nelson face no prospect of future litigation on the current claims, because the actions against them are hereby dismissed with prejudice. And BCC's potential liability to Gardner under the Human Rights Act is not affected in any way by the absence of the other defendants from this case. Although it appears that "individual supervisors can be held liable for their acts of discrimination," *Martini v. Federal Nat'l Mortgage Ass'n,* 977 F.Supp. 464, 479 (D.D.C.1997), this liability is separate and apart from that of the employer. *See id.* at 474–79; *Howard Univ. v. Best,* 484 A.2d 958, 983–84 (D.C. 1984). BCC's liability also will not be altered due to the absence of BCE and Great–West, because BCC's liability is based on the actions of supervisors in its employ, and on what it did and did not do to with respect to Gardner's claims. *See Best,* 484 A.2d at 983–84. Thus, because BCC's liability is separate from that of the other defendants, there is no prejudice from their dismissal.

Finally, we note that Gardner has acted in a timely manner throughout this litigation. She initially requested an interlocutory appeal prior to arbitration, which was denied by the District Court. She responsibly decided not to appeal that decision, because it seemed futile: in most of the circuits that had addressed the issue, Gardner's action would have been viewed as an "embedded" claim, and, as such, she would have been precluded from taking an appeal until after the District Court dismissed her action or issued some other final judgment with respect to her case. *See Ermenegildo Zegna Corp. v. Zegna,* 133 F.3d 177, 182–83 (2d Cir.1998) ("[W]hen the defendant introduces the arbitration question into a pending action, the case is typically considered embedded," and, as such, an interlocutory appeal without certification is not appropriate, "even when the order directs arbitration of all of the parties' claims and leaves nothing further for the district court to determine until the issuance of the arbitral award."); *cf. Cole,* 105 F.3d at 1470 (allowing appeal where District Court's order compelling arbitration also dismissed the plaintiff's complaint); *McCarthy v. Providential Corp.,* 122 F.3d 1242, 1247–49 (9th Cir. 1997) (Pregerson, J., dissenting) (discussing the difference between an action that is stayed pending arbitration, and one that is dismissed after arbitration is compelled). Because there was no final judgment in this case until March 12, 1998, Gardner was forced to wait until now to raise her arbitrability and enforcement questions before this court. Thus, although an unseemly amount of time has been spent on this litigation, most of the delay has been attributable to the District Court, not the parties.

■ With BCC as the sole defendant, we have no serious doubt in reaching the conclusion that Gardner is not required to arbitrate her claims in lieu of proceedings in District Court to address her complaint. Although there is some question as to whether § 1 of the NASD Code includes disputes between persons associated with NASD members, *see Farrand,* 993 F.2d at 1254–55, we will assume that such disputes fall within the ambit of arbitrable claims

under the pre-amendment NASD Code. It appears that Gardner falls within the definition of "person associated with a member," because she is a natural person who was engaged in the securities business and sold securities through NASD member BCE. *See* NASD By–Laws, Art. I, ¶ 1101(m). The question, then, is whether BCC is a "person associated with a member."

■ We agree with our colleagues on the Fifth Circuit that, when the definition is read in its entirety, it is clear that it includes only natural persons. *See Tays v. Covenant Life Ins. Co.*, 964 F.2d 501, 502–03 (5th Cir.1992). Although the second and third clauses explicitly include only "any natural person," all three of the clauses are limited by the last phrase of the definition, which reads "whether or not *any such person* is registered or exempt from registration with the [NASD] pursuant to [the NASD By–Laws]." NASD By–Laws, Art. I, ¶ 1101(m) (emphasis added). This reference to "any such person," rather than "any such entity" or the like, leads us to believe that the NASD intended to limit the parties who could be considered a "person associated with a member" to only those parties that are natural persons.

Moreover, this interpretation is "reinforced when the definition is compared with the statutory definition [of associated person] contained in the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(21)." *Tays*, 964 F.2d at 503. That act provides that "[t]he term 'person associated with a member' or 'associated person of a member' when used with respect to a member of a national securities exchange or registered securities association means any partner, officer, director, or branch manager of such member (or any person occupying a similar status or performing similar functions), any person directly or indirectly controlling, controlled by, or under common control with such member, or any employee of such member," 15 U.S.C. § 78c(a)(21) (1994), and that the term "person" includes "a natural person, company, government, or political subdivision, agency, or instrumentality of a government," 15 U.S.C. § 78c(a)(9). The NASD By–Laws do not define the term "person." However, the NASD definition of associated person includes the phrases "natural person" and "any such person," which are not present in the Securities Exchange Act's definition. Thus, we agree with the Fifth Circuit that these "changes from the statute to the NASD bylaws suggest a desire to limit the NASD definition to natural persons." *Tays*, 964 F.2d at 503.

Accordingly, a corporation such as BCC does not qualify as an associated person under this definition, and arbitration of the dispute between Gardner and BCC is not required. We therefore reverse the District Court's order compelling arbitration and remand the case for further proceedings to address the merits of Gardner's complaint.

### III. CONCLUSION

For the foregoing reasons, we dismiss with prejudice BenefitsCorp Equities, Inc., Great–West Life Assurance Company, Craig Wolpert, and Charles Nelson from this action. We also reverse the judgment of the District Court compelling arbitration, and remand this case between Benefits Communications Corporation and Gardner to the District Court for further proceedings to address the merits of Gardner's claims.

*So ordered.*