Emmanuel BAILEY, Appellee,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, Appellant.

No. 99–7103.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 22, 2000.

Decided April 21, 2000.

Juanita A. Crowley argued the cause for appellant. With her on the briefs was John Payton.

Kelly J. Davidson argued the cause for appellee. With her on the brief was Pamela J. White.

Before: EDWARDS, Chief Judge, TATEL and GARLAND, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

The instant litigation involves a claim of employment discrimination filed by the appellee, Emmanuel Bailey, against the appellant, Federal National Mortgage Association ("Fannie Mae" or "employer"). In response to Mr. Bailey's complaint, Fannie Mae filed a motion to stay litigation pending arbitration. The District Court denied the motion to stay, and Fannie Mae now appeals.

This case presents a new twist to an old problem. In *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465 (D.C.Cir.1997), we held that, if certain conditions are met, an employer may compel an employee to use arbitration in lieu of litigation to pursue a statutory claim of employment discrimination if the employee signed an arbitration agreement *as a condition of hire*. In this case, however, Fannie Mae seeks to compel arbitration pursuant to a "Dispute Resolution Policy" that was unilaterally promulgated by the employer *after Mr. Bailey was hired*. There is a serious question under *Cole* whether an employer may impose a condition of employment requiring a *current employee* to use arbitration before seeking to litigate statutory employment discrimination claims for no consideration save the employee's continued employment.

Fortunately, we do not have to decide this troublesome question. The issue was not raised before the trial court, because Fannie Mae disclaimed any intention of terminating Mr. Bailey if he persisted in his refusal to arbitrate the instant dispute. Fannie Mae contends only that its motion to stay should be granted because Mr. Bailey implicitly agreed to arbitrate statutory claims of employment discrimination when he continued to work for the employer after the issuance of the Dispute Resolution Policy. Mr. Bailey, in turn, claims that he never gave his assent to be bound by the employer's new arbitration policy. Mr. Bailey claims further that he made it clear to Fannie Mae that he did not subscribe to the employer's new arbitration policy.

The District Court denied Fannie Mae's motion to stay, finding that, because there was no meeting of minds between the parties, there was no arbitration agreement to enforce. We can find no error in the judgment of the District Court. Accordingly, we affirm.

## I. BACKGROUND

On March 12, 1998, Mr. Bailey filed a memorandum with Fannie Mae's Office of Corporate Justice requesting an investigation of various allegations of race and gender discrimination. In this memorandum, labeled a "Formal Complaint," Mr. Bailey stated:

Pursuant to the Fannie Mae Employee Handbook, I hereby submit a Formal Complaint with respect to the aforementioned violations of all applicable United States and District of Columbia Laws and the Fannie Mae Affirmative Action Plan. Further, I hereby retain all redress options available to me under the Equal Employment Opportunity Commissions (EEOC) [sic] and the United States and/or Local Court System.

Request for Formal Investigation, *reprinted in* Joint Appendix ("J.A.") 39.

Fannie Mae had announced in January 1998 that it would issue a new arbitration policy on March 16, 1998. Subsequently, on March 16, 1998, as promised, Fannie Mae issued a Dispute Resolution Policy, which required employees to pursue job-related claims internally, through arbitration, before such claims could be presented to a court of law. In particular, the Dispute Resolution Policy stated that, as of March 16, 1998,

the Policy becomes a condition of employment for all Fannie Mae employees. This means that, by starting or continuing work for Fannie Mae on or after that date, each employee is indicating that he or she accepts the Policy as a condition of employment and agrees to be bound by it.

Dispute Resolution Policy at 1, *reprinted in* J.A. 106.

Mr. Bailey never said anything to any official at Fannie Mae to indicate that he acceded to the Dispute Resolution Policy, and he never signed any agreement to that effect. And Mr. Bailey never did or said anything to withdraw the position stated in his March 12 complaint, in which he reserved the right to pursue statutory claims with the EEOC and in federal or state court. Indeed, on March 30, 1998, after the Policy was issued, Mr. Bailey's counsel sent a letter to Fannie Mae asserting that

Mr. Bailey's [March 12] Complaint was directed to [the employer] on that date specifically to avoid the effective date on March 16 of a new corporate policy that might have mandated arbitration of Mr. Bailey's issues.

Letter from Pamela J. White to Stasia Kelly (Mar. 30, 1998), *reprinted in* J.A. 70–71. On May 8, 1998, after an exchange of correspondence between the parties over Mr. Bailey's refusal to be bound by the new arbitration policy, Mr. Bailey's counsel sent another letter to Fannie Mae to reiterate her client's position:

Mr. Bailey retained "all redress options" available to him with the courts or EEO administrative agencies and, thus, rejected Fannie Mae's new mandatory arbitration policy effective March 16, 1998. Furthermore, with or without regard to the filing date and pendency of his Complaint, Mr. Bailey does not agree to be bound by the new "Dispute Resolution Policy."

Letter from Pamela J. White to Dawn P. Marcelle (May 8, 1998), *reprinted in* J.A. 186. In response to this last letter, Fannie Mae's counsel sent a letter to Mr. Bailey's attorney, reiterating the employer's position and reassuring Mr. Bailey that he was in no threat of losing his job:

Fannie Mae had not previously understood that Mr. Bailey had already decided that he would not be bound by the Dispute Resolution Policy. As you know, Fannie Mae considers Mr. Bailey to be bound by that Policy with respect to the complaint that he made on March 12, 1998. In the event that an employee disregards the Policy, Fannie Mae would enforce it by seeking appropriate judicial relief. As Fannie Mae previously told employees, it will not terminate them for failing to follow the Policy.

Letter from Fannie Mae to Pamela J. White, *reprinted in* J.A. 190.

On August 6, 1998, Fannie Mae rejected Mr. Bailey's complaint as unmeritorious. On December 14, 1998, Mr. Bailey filed a lawsuit in the Superior Court of the District of Columbia, alleging discrimination and retaliation in violation of 42 U.S.C. § 1981 (1994), discrimination and retaliation in violation of the D.C. Human Rights Act § 1–2501, and breach of implied contract in violation of 42 U.S.C. § 1981. Fannie Mae removed Mr. Bailey's lawsuit to the United States District Court for the District of Columbia on December 18, 1998. Fannie Mae then moved, pursuant to 9 U.S.C. § 3 (1994), to stay litigation pending arbitration of Mr. Bailey's claims. Because Mr. Bailey had rejected the policy of mandatory arbitration as a condition of his continued employment, he opposed the motion to stay.

On May 21, 1999, the District Court denied Fannie Mae's motion, finding that Mr. Bailey had effectively rejected the possibility of arbitration when he filed his complaint with Fannie Mae on March 12, 1998. Fannie Mae then filed this appeal pursuant to 9 U.S.C. § 16(a)(1) (1994).

## II. Discussion

### A. The Standard of Review

 Normally, the determination of *intent* is a question of fact. *See Pullman–Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). Therefore, a district court's findings on intent are subject to deferential review under Federal Rule of Civil Procedure 52(a), and such findings may not be set aside unless clearly erroneous. *See id.* at 287–88, 102 S.Ct. 1781. It does not matter whether a finding of fact is based on documentary evidence or inferences from other facts; in either event, an appellate court must respect a trial court's finding of fact unless it concludes that the finding is clearly erroneous. *See Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and

firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). And the burden of establishing a clear error is on the appellant. *See, e.g., Case v. Morrisette,* 475 F.2d 1300, 1307 (D.C.Cir.1973).

In *Pullman–Standard,* the Court applied Rule 52(a) to review a lower court's determination that the differential impact of a seniority system reflected an intent to discriminate racially. The Court expressly repudiated the view that facts could be put into distinguishable categories (*i.e.,* either subsidiary or ultimate) in determining whether Rule 52(a)'s clearly erroneous standard of review should apply. *See Pullman–Standard,* 456 U.S. at 287, 102 S.Ct. 1781. However, the Court left open the question of the standard of review for "mixed questions of law and fact," that is, "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." *Id.* at 289 n. 19, 102 S.Ct. 1781. It is unclear in this case whether the District Court's finding that Mr. Bailey never agreed to arbitration is a simple question of fact or a mixed question of law and fact. At first blush, the issue appears to raise a question of fact regarding the parties' intent. Unfortunately, the question is not so simple.

In *United States v. Microsoft Corp.,* 147 F.3d 935 (D.C.Cir.1998), the court observed that "[i]nterpretation of an ambiguous contract term on the basis of extrinsic evidence is generally treated as a question of fact, and the district court's findings as to the parties' intent are reviewed deferentially, i.e., reversed only for clear error." *Id.* at 945 n. 7. The majority opinion notes, however, that there are a number of cases in which the appellate court has engaged in *de novo* review of district court interpretations. *See id. Microsoft* assumes that "de novo review of legal analy-

sis is in principle compatible with deference to factual findings"; but the opinion then expresses concern that, under a "mixed approach" in a case involving a question of intent, "the centrality of intent would often make the deference swallow the de novo review, a result our cases do not seem to contemplate." *Id.*

The problem here is complicated even more, because this is not a case in which the parties disagree over the meaning of an existing agreement. Rather, the legal battle here is over the *existence* of a contract, not its meaning. In fact, both sides seem to agree that if the Dispute Resolution Policy constitutes an enforceable agreement, there is no disagreement over the meaning of the arbitration policy. The District Court found that Mr. Bailey never assented to the new arbitration policy. We must now decide whether the District Court's decision on this question is subject to deferential review under Rule 52(a).

One of our sister circuits has held that an appellate court engages in *de novo* review when considering a district court's order denying a stay of a federal suit pending arbitration pursuant to 9 U.S.C. § 3. *See, e.g., Riley Mfg. Co. v. Anchor Glass Container Corp.,* 157 F.3d 775, 779 (10th Cir.1998). According to the Tenth Circuit, such review requires the appellate court to evaluate "whether the district court correctly found that no valid and enforceable agreement to arbitrate the parties' dispute exists." *Id.* The Second Circuit, on the other hand, has held that a determination as to whether the parties entered into an enforceable agreement to arbitrate raises a mixed question of law and fact. *See Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg.* Co., 189 F.3d 289, 295 (2d Cir.1999). Fannie Mae contends that this court is required to review the judgment of the District Court *de novo.* Mr. Bailey, citing *Walker v. J.C. Bradford & Co.,* 938 F.2d 575, 576–77 (5th Cir.1991), appears to suggest that the matter involves a mixed question of law and fact. *See* Br. of Appellee at 14.

The D.C. Circuit has yet to address this precise question. In *Gardner v. Benefits Communications Corp.,* 175 F.3d 155 (D.C.Cir.1999), the court reversed a trial court's decision compelling arbitration, holding that the employee had never agreed to use arbitration in lieu of litigation. *Gardner* is inconclusive on the standard of review, however.

█ Now that we must squarely face the issue, we hold in accord with the Second Circuit

> that the determination that parties have contractually bound themselves to arbitrate disputes—a determination involving interpretation of state law—is a legal conclusion subject to our *de novo* review, ... but that the findings upon which that conclusion is based are factual and thus may not be overturned unless clearly erroneous.

*Chelsea Square,* 189 F.3d at 295. As we noted in *Microsoft,* "the centrality of intent" may in some cases "make the deference swallow the de novo review." 147 F.3d at 945 n. 7. The Second Circuit recognized, however, that cases of this genre often involve an interpretation of state law, which is a legal conclusion subject to *de novo* review. *See Chelsea Square,* 189 F.3d at 295.

## B. The Parties Never Agreed to Contractually Bind Themselves to Arbitrate

█ Fannie Mae had announced in January 1998 that it would issue the new arbitration policy on March 16, so the District Court found that Mr. Bailey "knew this [new] arbitration process was coming" when he filed his complaint with Fannie Mae on March 12, 1998. Trial Tr. at 5, *reprinted in* J.A. 203. The District Court therefore found that Mr. Bailey "made a timely election against arbitration" when he filed his complaint. *Id.* at 2, *reprinted in* J.A. 200. And, most importantly, the District Court found that Mr. Bailey's internal complaint "clearly signal[ed] ... that he was intending to invoke his rights to reject arbitration." *Id.* at 5, *reprinted*

*in* J.A. 203. In other words, the District Court found that Fannie Mae was "put . . . on notice" that Mr. Bailey rejected the new arbitration policy. *Id.* at 6, *reprinted in* J.A. 204. The District Court's findings are supported by the record and easily survive review under Rule 52(a).

■ Fannie Mae, however, claims that Mr. Bailey's determination to retain his right to pursue statutory claims before the EEOC and in the courts was not inconsistent with the employer's policy requiring employees to use arbitration. This assertion is simply wrong. Absent an *agreement* to arbitrate, an employee is not required to exhaust arbitration as a condition precedent to pursuing his statutory remedies before the EEOC and the courts. Therefore, Mr. Bailey's so-called "redress options" would be dramatically changed—in terms of cost, time delays, and, possibly, inadequate adjudicatory processes—if he were barred from litigation until after he pursued his claims in arbitration. And, if forced to use arbitration, there is always the possibility that a reviewing court might give some deference to an arbitrator's findings, arguably to the detriment of a litigant like Mr. Bailey. *See Cole,* 105 F.3d at 1486–87 (discussing the scope of judicial review and deference to arbitration); *see also* Harry T. Edwards, *Where Are We Heading With Mandatory Arbitration of Statutory Claims in Employment?,* 16 GA. ST. U. L. REV. 293, 304–06 (2000) (discussing different judicial approaches to the scope of review and deference to arbitration awards). There are many parties and their advocates who abhor arbitration precisely because it often adversely affects redress options. *See* discussion and citations in *Cole,* 105 F.3d at 1477–79. *See generally A Focus Issue on Mandatory Arbitration Clauses,* THE CONSUMER ADVOCATE (Nat'l Association of Consumer Advocates, Washington, D.C.) Sept./Oct.1999; Ethan A. Brecher, *Putting the Reins on Employment Arbitration: Courts Safeguard Employee Rights,* N.Y. L.J. Aug. 24, 1999, at 1; Harry T. Edwards, *Where Are We Heading With Mandatory Arbitration of Statutory Claims in Employment,* 16 GA. ST. U. L. REV. 293; Morton H. Orenstein, *Mandatory Arbitration: Alive and Well or Withering on the Vine?,* 54 DISP. RESOL. J. 57 (Aug.1999); Debra Parker, *Tangled Up in Ticker Tape,* 85 A.B.A. J. 44 (1999).

Quite apart from Mr. Bailey's complaint and what it signaled to Fannie Mae, there are several other telling facts in the record of this case. It is undisputed that Mr. Bailey never executed any written agreement with Fannie Mae to arbitrate statutory claims of employment discrimination. Indeed, it is uncontested that the parties never purported to reach an understanding by oral agreement. It is also unquestioned that Mr. Bailey never said or wrote anything after Fannie Mae issued its new arbitration policy, either to rescind what he had said in his written complaint or to otherwise indicate that he subscribed to the Dispute Resolution Policy. In fact, after the new policy was issued, Mr. Bailey's counsel wrote to officials at Fannie Mae to make it clear that Mr. Bailey was not bound to pursue his claims in arbitration.

In short, there are no disputes between the parties over these material facts. The only remaining question, therefore, is whether the District Court erred in concluding that Fannie Mae failed to fulfill its burden of proving that there was an agreement as to all material terms and that both parties intended to be bound by the arbitration policy. Whether we apply a *de novo* standard of review or "clearly erroneous" review under Rule 52(a), it is clear here that the judgment of the District Court must be affirmed.

Fannie Mae persists in arguing that there was an "agreement" between the parties because Mr. Bailey did not unequivocally and effectively voice his opposition to the new arbitration policy. There are two problems with this argument: First, the District Court found otherwise, and that finding is not clearly erroneous. Second, the argument has a false premise. The question here is not whether Mr. Bai-

ley effectively rejected what his employer proposed, for he had no obligation even to respond to Fannie Mae's proposal. The issue is whether Mr. Bailey did something to indicate that he intended to enter into an agreement with Fannie Mae so as to bind himself to pursue his statutory claims of employment discrimination in arbitration.

The Supreme Court has instructed in *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), that "[w]hen deciding whether the parties agreed to arbitrate a certain matter, ... courts generally ... should apply ordinary statelaw principles that govern the formation of contracts." *Id.* at 944, 115 S.Ct. 1920. Thus, in this case, we must look to the law of the District of Columbia to determine whether the employer's Dispute Resolution Policy reflects a binding agreement between Mr. Bailey and Fannie Mae.

 Under applicable District of Columbia law, "[a]rbitration is predicated upon the consent of the parties to a dispute, and the determination of whether the parties have consented to arbitrate is a matter to be determined by the courts on the basis of the contracts between the parties." *Ballard & Assocs., Inc. v. Mangum,* 368 A.2d 548, 551 (D.C.1977). Furthermore, under District law, an enforceable contract does not exist unless there has been a "meeting of the minds" as to all material terms. In other words, a contract is not formed unless the parties reach an accord on all material terms and indicate an intention to be bound. *See Jack Baker, Inc. v. Office Space Dev. Corp.,* 664 A.2d 1236, 1238 (D.C.1995). With respect to proof of intent, the D.C. Court of Appeals has held that "the parties' intention to be bound must be 'closely' examined." *Id.* at 1239. The court explained:

In evaluating contract formation, we also look closely at the parties' intention to be bound. In order to form a binding agreement, both parties must have the distinct intention to be bound; without

such intent, there can be no assent and therefore no contract.

*Id.* (quoting *Edmund J. Flynn Co. v. La-Vay,* 431 A.2d 543, 547 (D.C.1981)). Finally, the party asserting the existence of a contract has the burden of proving its existence. *See Ekedahl v. COREStaff, Inc.,* 183 F.3d 855, 858 (D.C.Cir.1999) (per curiam). In this case, Fannie Mae has not come close to satisfying the requirements of District of Columbia law in its attempt to prove the existence of an agreement between the employer and Mr. Bailey.

Fannie Mae's principal claim is that Mr. Bailey agreed to the new arbitration policy because he did not positively reject it. This is a *non sequitur.* Even if we accepted the premise—which we do not, because the District Court's finding to the contrary is not clearly erroneous—it would not follow that Mr. Bailey's failure to reject a proposal, without more, evidenced his assent to be bound. District of Columbia law clearly requires a "meeting of the minds" as to all material terms for a contract to be formed. There was no "meeting of the minds" in this case, because Mr. Bailey did nothing whatsoever to embrace the employer's proposal.

 Fannie Mae also claims that when Mr. Bailey *continued* in his job with the employer, this showed that he acceded the Dispute Resolution Policy, because the Policy itself was proclaimed to be a "condition of employment." This, too, is a flawed argument. First, as counsel acknowledged at oral argument, there is a question as to whether Fannie Mae could terminate a current employee solely because of his or her refusal to accept the new arbitration policy. The Ninth Circuit has held that

the unilateral promulgation by an employer of arbitration provisions in an Employee Handbook does not constitute a "knowing agreement" on the part of an employee to waive a statutory remedy provided by a civil rights law.

*Nelson v. Cyprus Bagdad Copper* Corp., 119 F.3d 756, 762 (9th Cir.1997); *see also*

*Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 79–82, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) (holding that a general arbitration clause in a collective bargaining agreement does not waive an employee's right to judicial forum for claim of employment discrimination; an employee does not waive a statutorily protected right unless the undertaking is "explicitly stated," and any such "waiver must be clear and unmistakable"); *Mohave Elec. Coop. v. NLRB*, 206 F.3d 1183 (D.C.Cir. 2000) (same); *Cole*, 105 F.3d at 1482 (noting that the Supreme Court's decision in "*Gilmer* cannot be read as holding that an arbitration agreement is enforceable no matter what rights it waives or what burdens it imposes"). In other words, Mr. Bailey had reason to assume that, under existing law, his job was not in jeopardy. This being the case, Mr. Bailey signaled nothing when he remained in the employ of Fannie Mae following the issuance of the arbitration policy. Furthermore, to be sure that there was no confusion on this point, Mr. Bailey's lawyer specifically raised the issue with the employer; in response, Fannie Mae's attorney assured Mr. Bailey that he was in no threat of losing his job over his refusal to subscribe to the employer's arbitration policy. Given these considerations, Mr. Bailey's continued employment with Fannie Mae surely was not an indication that he intended to be bound by the arbitration policy.

In light of the undisputed facts in this case and the applicable law of the District of Columbia, we are constrained to find that the District Court was correct in rejecting Fannie Mae's motion to stay litigation pending arbitration.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the District Court.

*So ordered.*