Ramona A. BURGESS, Plaintiff,

v.

QWEST CORPORATION, Defendant.

Civ. No. 07–6321–AA.

United States District Court,
D. Oregon.

April 28, 2008.

Keith D. Karnes, Olsen, Olsen & Daines, LLC, Salem, OR, for Plaintiff.

Lawrence H. Reichman, Perkins Coie, LLP, Portland, OR, for Defendant.

## OPINION AND ORDER

AIKEN, District Judge:

Plaintiff filed suit against defendant for damages and injunctive relief alleging violations of the federal Common Carrier Regulation, 47 U.S.C. § 201, *et seq.*, and the Oregon Unlawful Debt Collection Practices Act, Or.Rev.Stat. § 646.639, *et seq.* Defendant moves to compel arbitration and stay the proceedings pursuant to arbitration agreements between the parties and the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.* Defendant further requests an award of its reasonable costs and attorney's fees, incurred in bringing this motion. The motion is denied.

## *BACKGROUND*

The following facts are alleged in plaintiff's Complaint. On or about June 28, 2006, the parties entered into an agreement for defendant to provide plaintiff with telephone, cellular, and internet services. Shortly thereafter, plaintiff canceled her internet service and defendant agreed to credit her for the initial charges. However, defendant repeatedly billed plaintiff for those initial charges, repeatedly sent plaintiff past due notices, and threatened to disconnect her telephone services.

Plaintiff also experienced telephone service disruption, which caused her extreme difficulty as she was undergoing cancer treatment. Eventually, she canceled her telephone service due to these disruptions. Nevertheless, defendant continued to bill plaintiff for its services, and sought to collect an outstanding balance of $154.62. *See* Complaint, Ex. 1. Plaintiff employed

an attorney and requested that defendant cease attempting to collect payment from plaintiff. Defendant refused and continued its attempts to collect payment.

Plaintiff filed suit on November 7, 2007. On February 11, 2008, defendant moved to compel arbitration.

### DISCUSSION

Defendant asserts that plaintiff entered into two agreements; one for internet services and another for wireless telephone services. Defendant claims that each of those agreements included a valid dispute resolution provision that obligates the parties to submit "any dispute or claim arising out of or relating to" the agreement or the services provided to binding arbitration.

Specifically, the Internet Agreement provides:

> Dispute Resolution and Arbitration; Governing Law. PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS RIGHTS THAT YOU MAY OTHERWISE HAVE. IT PROVIDES FOR RESOLUTION OF DISPUTES THROUGH MANDATORY ARBITRATION WITH A FAIR HEARING BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY OR THROUGH A CLASS ACTION.

> Arbitration Terms. You agree that any dispute or claim arising out of or relating to the Services, Equipment, Software, or this Agreement (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory) will be resolved by binding arbitration.

> \* \* \*

Declaration of Patricia Mallett, Ex. 1, p. 10.

Likewise, the Wireless Agreement includes the following:

> Resolution of Disputes. Except as set forth in the last sentence of this provision, any dispute or claim arising out of

or relating to this Agreement, the Service or Wireless Phone will be resolved by binding arbitration, and both you and Qwest expressly waive any right to file any claim in court or to have any claim decided by a jury.

> \* \* \*

Mallett Decl., Ex. 2, p. 7.

Defendant argues that the arbitration agreements between the parties are binding and enforceable, and that this proceeding must be stayed pending arbitration of plaintiff's claims. Defendant relies on the FAA, which renders a written agreement to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Plaintiff responds that she had no knowledge of these agreements and did not agree to arbitrate any claims. Alternatively, plaintiff asserts that a triable issue of fact exists and requests that the court refer the issue of whether an arbitration agreement exists for jury trial. 9 U.S.C. § 4.

■ The FAA establishes an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 .U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Where "the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. However, "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *see also AT & T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (" '[A]rbitration is a

matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit.' ") (citation omitted). Therefore, issues as to the existence and validity of an arbitration agreement are for courts and not the arbitrators. *See, e.g., Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.,* 925 F.2d 1136, 1140–41 (9th Cir.1991) ("[A] party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate. Only a court can make that decision.") (footnote omitted); *see also* 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.").

■ Accordingly, before this court may stay proceedings in this action and compel arbitration, it must determine: 1) whether there is a valid agreement to arbitrate between the parties; and 2) whether the claims or issues raised are within the scope of such agreement. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010, 1012 (9th Cir.2004) ("[T]he district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue."); *see also Int'l Union of Operating Eng'rs v. Flair Builders, Inc.,* 406 U.S. 487, 491, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000); *Torrance v. Aames Funding Corp.,* 242 F.Supp.2d 862, 868 (D.Or.2002). In determining whether a valid arbitration agreement exists, the court " 'should apply ordinary state-law principles that govern the formation of contracts.' " *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options,* 514 U.S. at 944, 115 S.Ct. 1920).

■ Although the FAA establishes a federal policy in favor of arbitration, it also places arbitration agreements "on equal footing with all other contracts." *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 293, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Thus, "[t]he party seeking to compel arbitration bears the burden of establishing the existence of an agreement to arbitrate by a preponderance of the evidence," just as the party seeking relief under any other alleged contract has the burden of proving that contract's existence. *Johnson v. Long John Silver's Restaurants, Inc.,* 320 F.Supp.2d 656, 664 (M.D.Tenn.2004); *Holdner v. Holdner,* 176 Or.App. 111, 120, 29 P.3d 1199 (2001) (proponent of an alleged contract bears "the burden of establishing its existence and its terms" by a preponderance of the evidence); *see also McCarthy v. Azure,* 22 F.3d 351, 354–55 (1st Cir.1994) ("[A] party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate *some* claims."); *Tellium, Inc. v. Corning, Inc.,* 2004 WL 307238, at *5 (S.D.N.Y. Feb. 13, 2004) (citing *Progressive Cas. v. C.A. Reaseguradora Nacional,* 991 F.2d 42, 46 (2d Cir.1993)); *Klocek v. Gateway, Inc.,* 104 F.Supp.2d 1332, 1336 (D.Kan.2000) (party seeking to compel arbitration "must present evidence sufficient to demonstrate the existence of an enforceable agreement to arbitrate").

## A. The Internet Agreement

■ In arguing that plaintiff agreed to the arbitration terms in the Internet Agreement, defendant relies on one of the Internet Agreement's introductory paragraphs, which states:

BY ENROLLING IN, ACTIVATING, USING OR PAYING FOR THE SERVICE AND/OR EQUIPMENT, FAILING TO RETURN THE EQUIPMENT AND CANCEL SERVICE

WITHIN 30 DAYS AFTER ORDERING SERVICE OR EQUIPMENT, OR INSTALLING THE EQUIPMENT YOU AFFIRM THAT YOU UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS IN THIS AGREEMENT, EVEN IF YOU CHOOSE NOT TO READ IT.

Mallett Decl., Ex. 1, p. 1.

Defendant asserts that plaintiff therefore agreed to the terms by enrolling in the internet service and by failing to return the modem equipment within thirty days. However, defendant presents no evidence that plaintiff was made aware of the introductory paragraph quoted above or of the arbitration clause contained within the Internet Agreement. In fact, plaintiff asserts that she did not read or agree to these terms and that she was not made aware of their existence.

■ Under Oregon and federal law, defendant must establish an "objectively manifested meeting of the minds" with respect to the Internet Agreement and the arbitration clause. *Martin v. Comcast,* 209 Or.App. 82, 97, 146 P.3d 380 (2006); *see also First Options,* 514 U.S. at 944, 115 S.Ct. 1920 ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakeabl[e]' evidence that they did so."); *Bailey v. Fed. Nat'l Mortgage Ass'n,* 209 F.3d 740, 746 (D.C.Cir.2000) ("[A]n enforceable contract does not exist unless there has been a 'meeting of the minds' as to all material terms."). Here, defendant fails to do so. Defendant provides no evidence, such as a signed agreement or documented communications with plaintiff, to establish that plaintiff was aware of the terms of the Internet Agreement and agreed to them.

*See Martin,* 209 Or.App. at 97, 146 P.3d 380 ("bill stuffers" containing terms of arbitration clause did not create an agreement to arbitrate between cable service provider and its customers).

Further, I am not persuaded that plaintiff "agreed" to the Internet Agreement or the arbitration clause by "enrolling" in internet services, or by failing to return the modem within thirty days. According to plaintiff, she canceled her internet service before it was activated—because of interference with her home security system—and immediately sought to return the modem. I decline to find that plaintiff's alleged failure to return the modem within the prescribed thirty-day period constitutes an "objectively manifested meeting of the minds." *Id.* (affirming trial court finding that "nonaction did not signify acceptance of the arbitration term"). Therefore, defendant has not provided sufficient evidence for this court to conclude, by a preponderance of the evidence, that plaintiff agreed to the terms of the arbitration clause contained in the Internet Agreement.[1]

## B. The Wireless Agreement

■ Defendant also relies of the Wireless Agreement to compel arbitration. Defendant contends that "[b]ased upon Qwest's standard business practices, plaintiff would have been required to accept [the] terms [of the Wireless Agreement] when she subscribed to this service." Mallett Decl. ¶ 3. However, defendant does not dispute plaintiff's contention that she enrolled in and activated defendant's cell phone service by telephone. Rather, defendant asserts that its standard business

---

1. Notably, the arbitration provision in the Internet Agreement contains the following exception: "either party may pursue claims ... in court if they relate solely to the collection of any debts you owe to Qwest." Mallet Decl., Ex. 1, p. 10. Therefore, plaintiff's claims relating to defendant's efforts to collect fees for internet services would not be within the scope of the arbitration clause in any event.

practice is to inform the customer during the telephone call that written terms and conditions apply to the service and will be included with the handset subsequently sent to the customer, and that the customer should not activate the service if she does not agree to all of the terms and conditions. Defendant also claims that the plaintiff would have received a copy of the Wireless Agreement with her wireless phone.

Plaintiff emphasizes that it would not have been possible to agree to the terms of the Wireless Agreement in an ordinary telephone conversation, as they comprise almost eight single-spaced pages. Further, plaintiff asserts that she does not recognize the Wireless Agreement and that she did not agree to its terms.

As explained with respect to the Internet Agreement, I find that defendant fails to establish by a preponderance of the evidence that plaintiff agreed to the terms of the Wireless Agreement. Defendant provides no evidence specific to the call between plaintiff and defendant or the materials actually provided to plaintiff so as to establish a "meeting of the minds" between the parties. As stated by the Oregon Court of Appeals in *Martin*:

> Those documents ["bill stuffers"] support the inference that a subscriber could easily have continued using Comcast's service without ever being aware of the arbitration clause. Indeed, the [plaintiff] averred that she was unaware of receiving the notices that purported to change her cable subscription.

*Martin*, 209 Or.App. at 97, 146 P.3d 380. Thus, defendant has not offered sufficient evidence for this court to conclude, by a preponderance of the evidence, that defendant's standard business practices were followed and that plaintiff was made aware of and agreed to the arbitration clause contained in the Wireless Agreement or to the agreement itself.

In sum, the court concludes that defendant has failed to demonstrate by a preponderance of evidence that the parties agreed to arbitrate any disputes. In the absence of anything other than conclusory statements regarding defendant's standard business practices contained in defendant's motion and affidavits, I find, as a matter of law, that the parties did not enter into an agreement to arbitrate. Accordingly, the arbitration provisions are not enforceable.

### *CONCLUSION*

Defendant's Motion to Compel Arbitration (doc. 10) is DENIED.

IT IS SO ORDERED.