### INITIATIVE AND REFERENDUM INSTITUTE, et al., Plaintiffs,

v.

### UNITED STATES POSTAL SERVICE, Defendant.

#### No. Civ.A. 00–1246(RWR).

United States District Court, District of Columbia.

Aug. 31, 2000.

---

John R. Ferguson, Ky Elaine Kirby, Swidler, Berlin, Shereff & Friedman, L.L.P., Washington, DC, Arthur Barry Spitzer, American Civil Liberties Union, Washington, DC, for plaintiffs.

Maria Utgoff Braswell, United States Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION

ROBERTS, District Judge.

Plaintiffs, individuals and associations gathering signatures to place initiatives on state ballots in upcoming elections, are challenging the constitutionality of a United States Postal Service ("USPS") regulation that prevents people from soliciting signatures for petitions, polls, or surveys on USPS property. The parties have filed and had a hearing on their cross-motions for summary judgment. Because I find that the factual record before me is insufficient to find that either side is entitled to a judgment as a matter of law, both motions must be denied.

### I. Background

Prior to June 28, 1998, USPS regulations were silent on the subject of soliciting signatures on postal property, although

the regulations prohibited some other solicitation activities. *See* 39 C.F.R. § 232.1(h)(1) (1997). On that date, however, USPS amended its regulation regarding the kinds of activities that were prohibited on postal property to read as follows:

> Soliciting alms and contributions, campaigning for election to any public office, collecting private debts, soliciting and vending for commercial purposes (including, but not limited to, the vending of newspapers and other publications), displaying or distributing commercial advertising, *soliciting signatures on petitions, polls, or surveys (except as otherwise authorized by Postal Service regulations)*, and impeding ingress to or egress from post offices are prohibited.

39 C.F.R. § 232.1(h)(1) (2000) (" § 232.1(h)(1)") (emphasis added). The new regulation is almost identical to the old regulation with the exception of the addition of the emphasized language prohibiting solicitation of signatures. It is this added language that gives rise to this suit.

Nine association and sixteen individuals brought this suit to challenge the new prohibition. The leading plaintiff, the Initiative and Referendum Institute, is a national nonprofit organization dedicated to assisting citizens' ability to participate in government through initiatives and referenda. All of the other associations involved here are advocacy groups that have been proponents of a variety of initiatives in the past and plan to be proponents of initiatives in the future.[1] The individual plaintiffs all state that they have been involved in gathering signatures to support issues in the past and plan to continue such activity in the future. Each individual states that his or her ability to collect signatures is hampered by the USPS regulation at issue here.

Eight individual plaintiffs state in affidavits that after the amended § 232.1(h)(1) took effect, each was asked by a USPS employee to stop gathering petition signatures on postal property. (Pls.' Mot. Summ.J.Exs. 13, 15–21.) All eight say that the post offices where they were collecting signatures were divided from the public road by a parking lot and that each post office had a sidewalk or open cement area leading from the parking lot to the post office entrance. (*Id.*) These affiants all represent that they were standing on those sidewalks or open areas when they were asked to stop their solicitations. (*Id.*) They provide no additional information about the exact configuration of those locations or the actual physical attributes or historical use of any specific post office.

Plaintiffs have moved for summary judgment in their favor arguing that § 232.1(h)(1) is unconstitutional on its face and as applied to them because it is a content-based restriction on speech in a public forum. As such, they contend, the regulation cannot withstand the test of being narrowly tailored to serve a compelling state interest. Defendant has also moved for summary judgment on its behalf arguing, first, that exterior USPS property is a nonpublic forum and therefore § 232.1(h)(1) is valid because it is viewpoint-neutral and reasonable, and, second, that even if the property at issue here is considered a public forum, § 232.1(h)(1) is a valid regulation of time, place and manner of expression as it is content-neutral, narrowly tailored to serve a significant government interest and leaves open ample alternative channels of communication.

## II. Standard of Review

### A. Summary Judgment

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment must provide the district court with a

---

1. The organizations are Americans for Medical Rights, Citizens for Limited Taxation, Clean, The Humane Society of the United States, Nebraskans for Limited Terms, Oregonians for Fair Elections, Oregon Taxpayers United, and U.S. Term Limits.

factual record sufficient to demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may support its motion successfully if it " 'inform[s] the district court of the basis for its motion, and identif[ies] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1032 (D.C.Cir. 1988) (citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c))). In this case involving cross-motions for summary judgment, the Court must determine whether either party, as a movant, has supported its motion with sufficient evidence that no dispute exists concerning the facts that must be assessed to determine the constitutionality of section 232.1(h)(1).

## B. First Amendment

Gathering signatures to place an initiative on a state ballot is core political speech protected by the First Amendment. *See Meyer v. Grant,* 486 U.S. 414, 421–22, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988). Plaintiffs' right to pursue this protected activity, however, depends on the character of the property to which they seek access. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *see also Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. 788, 801, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (stating that "in defining the forum [the Court has] focused on the access sought by the speaker"). Property that belongs to the United States government can be defined as a traditional public forum, a designated public forum, or a nonpublic forum. *See Cornelius,* 473 U.S. at 802, 105 S.Ct. 3439. First Amendment activity in a traditional public forum or a designated public forum is protected by heightened standards of review of restrictions on speech. *See Perry,* 460 U.S. at 45–46, 103 S.Ct. 948. Restrictions on speech in a nonpublic forum, on the other hand, will be upheld as long as they are not viewpoint-based and are reasonable. *See id.* at 46, 103 S.Ct. 948.

## 1. Traditional Public Forum—Definition

A public forum is property "which by long tradition or by government fiat ha[s] been devoted to assembly and debate. . . ." *Perry,* 460 U.S. at 45, 103 S.Ct. 948. The ability to freely exchange ideas is the hallmark of a public forum. *See Cornelius,* 473 U.S. at 800, 105 S.Ct. 3439. Public parks, streets and sidewalks are prototypical public fora because they have " 'immemorially been held in trust for the use of the public, and, time out of mind, have been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " *Perry,* 460 U.S. at 45, 103 S.Ct. 948 (quoting *Hague v. CIO,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)); *see also United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983).

The extent to which property has been held open to the public is relevant to this issue but not determinative. *See Grace,* 461 U.S. at 177, 103 S.Ct. 1702. In *Grace,* for example, the fact that the Supreme Court building and grounds had not typically been held open to the public did not prevent the Court from finding that the sidewalks surrounding that building constituted a public forum. *Id.* at 178, 103 S.Ct. 1702. Of particular importance in that case was the fact that the sidewalks at issue there were "indistinguishable from any other sidewalks in Washington, D.C." *Id.* at 179, 103 S.Ct. 1702. "There is no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court grounds that they have entered some special type of enclave." *Id.* at 180, 103 S.Ct. 1702. Thus, the lack of physical difference between normal public sidewalks, which are clearly public fora, and the sidewalks at issue in

*Grace* weighed in favor of finding that the Court sidewalks also constituted a public forum. *See also Community for Creative Non–Violence v. Turner,* 893 F.2d 1387, 1391 (D.C.Cir.1990) (finding that "[t]o the extent that [the property owned by the city transit system] is indistinguishable from the public sidewalks, it constitutes a public forum under *Grace* ").

Conversely, the fact that the public may come and go freely through a particular area does not necessarily mean that such an area is a public forum. *See Greer v. Spock,* 424 U.S. 828, 836, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). "[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Service v. Council of Greenburgh Civic Ass'ns,* 453 U.S. 114, 129, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981). Government, as much an any other property owner, is allowed to manage its property in such a way as to best carry on its business. *See Adderley v. Florida,* 385 U.S. 39, 47, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). In determining the extent to which the public may be guaranteed access to a particular location on government property, "the nature of the forum and the conflicting interests involved" remain important considerations. *Lehman v. City of Shaker Heights,* 418 U.S. 298, 302–03, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974).

Unfortunately, the most apposite Supreme Court case provides no definitive guidance. *See United States v. Kokinda,* 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990). That case involved a sidewalk outside a post office in Bowie, Maryland. *See id.* at 723, 110 S.Ct. 3115. The plurality opinion in *Kokinda,* joined by four Justices, found that a post office sidewalk, much like those described by plaintiffs in this case, "does not have the characteristics of public sidewalks traditionally open to expressive activity." *Id.* at 727, 110 S.Ct. 3115. Stating that "the location and purpose of a publicly owned sidewalk is critical" in determining whether it is a public forum, *id.* at 728–29, 110 S.Ct. 3115 the plurality decided that the post office

sidewalk was not a public forum because it was "constructed solely to provide for the passage of individuals engaged in postal business." *Id.* at 727, 110 S.Ct. 3115.

The dissenting opinion, joined also by four Justices, found, to the contrary, that the postal sidewalk clearly was a public forum. *Id.* at 740, 110 S.Ct. 3115. Pointing to case law that establishes sidewalks as one of the quintessential examples of a public forum, Justice Brennan for the dissenters argued that there was no reason to treat this sidewalk any differently from any other sidewalk. *Id.* at 742, 110 S.Ct. 3115 (quoting *Grace,* 461 U.S. at 177, 103 S.Ct. 1702). In particular, the dissent noted that the fact that the sidewalk in question in *Kokinda* ran only between a parking lot and the post office entrance was not important because the "[t]he existence of a public forum does not turn on a particularized factual inquiry into whether a sidewalk serves one building or many or whether a street is a dead end or a major thoroughfare." *Id.* at 744, 110 S.Ct. 3115.

Justice Kennedy, in his concurring opinion found that "there remains a powerful argument that, because of the wide range of activities that the Government permits to take place on this postal sidewalk, it is more than a nonpublic forum." *Id.* at 737, 110 S.Ct. 3115. Justice Kennedy, however, declined to decide the forum issue, finding that even if the sidewalk was a public forum the regulation was permissible under the applicable time, place and manner rules.

This Court is left then to determine anew whether exterior post office property constitutes a public forum within the existing case law. Other Circuits, however, have provided guidance in cases addressing similar issues.

In a criminal case preceding *Kokinda,* the Third Circuit addressed the public forum status of post office sidewalks in connection with the criminal prosecution of individuals who had been attempting to solicit charitable donations on post office property at post offices in Pittsburgh,

Pennsylvania. *See United States v. Bjerke*, 796 F.2d 643, 645 (3d Cir.1986). Noting that "[a] multitude of different layouts and geographical configurations characterize the thousands of post offices in the United States[,]" the Third Circuit declined to decide the forum status of any property except that on which the defendants had been attempting to solicit donations. *Id.* at 648. Based on the physical characteristics of those locations and the function they had served, the Court found that the sidewalks in question were nonpublic fora. *Id.* at 648–49.

Similarly, the Seventh Circuit noted that the evidentiary record in the case before the Court was insufficient to decide, as the plaintiffs seem to have requested, whether all post office property within the Northern District of Illinois could be considered either a traditional or designated public forum. *See National Anti–Drug Coalition, Inc. v. Bolger*, 737 F.2d 717, 722–23 (7th Cir.1984). While the plaintiffs in that case had submitted floor plans of five post offices within the district, there was no evidence about the remaining post offices, which were spread out over the state of Illinois. *Id.* Stating that the lack of evidence precluded the Court from analyzing the forum status of the extensive property about which plaintiffs requested a ruling, the Seventh Circuit instead found that even if it were to rule that the subject property constituted a public forum, the prohibitions on solicitation of donations and the sale of literature at issue in that suit nevertheless would be reasonable time, place and manner restrictions. Thus, the court upheld the constitutionality of the provision at issue as applied at those locations. *Id.* at 723.

■ Three other Circuits—the Second, Ninth and Eleventh—have ruled on specific post office property by analyzing the particular characteristics of the locations in question and found the properties at issue to be nonpublic fora. *See Longo v. United States Postal Serv.*, 983 F.2d 9, 11 (2d Cir.1992); *Jacobsen v. United States Postal Serv.*, 993 F.2d 649, 654, 656 (9th Cir.1992); *United States v. Belsky*, 799 F.2d 1485, 1487, 1489 (11th Cir.1986). Thus, all Circuits to have characterized these locations have found them not to be public fora. More importantly, however, it is clear that a decision on the public forum issue turns on an analysis of the specific nature and characteristics of the actual property in question.

### 2. Traditional Public Forum—Level of Scrutiny

■ If a location is determined to constitute a traditional public forum, the government's ability to restrict speech at that location is limited. Because public fora are central to the free exchange of ideas that our Constitution so values, if the government enacts content-based restrictions on speech in a public forum, the restriction must be narrowly tailored to serve a *compelling* state interest. *See Perry*, 460 U.S. at 45, 103 S.Ct. 948. Even in public fora, however, the law recognizes the government's need to manage its property through the use of reasonable time, place, and manner restrictions. Time, place, and manner restrictions will be valid so long as they: (1) are content-neutral; (2) are narrowly tailored to serve a *significant* government interest; and (3) leave open ample alternative channels for communication. *See id.*

■■ A regulation is not content-based within the meaning of this test merely because it targets a particular manner of speech. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791–93, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (holding that city's sound regulation on musical performances at a public arena were content-neutral). Rather, a restriction is content-neutral so long as it has not been adopted because of disagreement with the message "even if it has an incidental effect on some speakers or messages but not others." *Id.* at 791–92, 109 S.Ct. 2746. If government can justify its regulation without reference to the content of the speech, the regulation can pass muster.

In assessing the second element of the time, place, and manner restrictions, courts must again look to "the characteristic nature and function of the particular forum involved" to determine the significance of the asserted government interest. *Heffron v. International Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 650–51, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). The pattern of normal activities around the location is relevant to determining the reasonableness of a restriction on speech. *See Grayned v. City of Rockford*, 408 U.S. 104, 116, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The Supreme Court has found that the government has "a substantial interest in controlling the activity around certain public and private places" such as hospitals, court houses, health care facilities, schools and private homes. *See Hill v. Colorado*, 120 S.Ct. 2480, 2491–92, 2496, 147 L.Ed.2d 597 (2000) (finding that a regulation restricting oral speech and leafletting within eight feet of individuals who were within 100 feet of a health care facility entrance was not content-based). Due to the split vote in *Kokinda*, however, it is not clear whether the Supreme Court would consider controlling activity outside post offices to be a significant government interest.

■ While a restriction must be narrowly tailored to meet the asserted interest, in this analysis, the restriction need not be the least restrictive or least intrusive alternative open to the government to withstand scrutiny. *See Hill*, 120 S.Ct. at 2494 & n. 32 (citing *Ward*, 491 U.S. at 798, 109 S.Ct. 2746). If the regulation " 'promotes a substantial government interest that would be achieved less effectively absent the regulation,' " the narrow tailoring requirement is fulfilled. *Ward*, 491 U.S. at 799, 109 S.Ct. 2746 (quoting *United States v. Albertini*, 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)).

■ Finally, leaving open ample alternative channels generally means that the speaker will be able to convey his or her message in some manner although not at the exact time or in the precise manner he or she may wish. *See Turner*, 893 F.2d at 1393 (citing *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 295, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988); *Ward*, 491 U.S. at 802, 109 S.Ct. 2746)). In this context, regulations that merely prevent speakers from addressing unwilling listeners while allowing speakers to address willing listeners have gained court approval. *See, e.g., Hill*, 120 S.Ct. at 2491–92; *Heffron*, 452 U.S. at 655, 101 S.Ct. 2559. Regulations that leave speakers "no intra-forum alternative" by which to convey their message to those who are interested have been frowned upon. *Turner*, 893 F.2d at 1393; *see also Heffron*, 452 U.S. at 654, 101 S.Ct. 2559 (noting with approval the fact that the regulation at issue allowed plaintiffs to convey their message within the forum). A regulation that merely reduces the audience that a speaker may reach within the forum does not necessarily fail at this step of the analysis. *See Ward*, 491 U.S. at 802, 109 S.Ct. 2746. A rule that restricts a speaker from the forum entirely is likely to be more suspect. *See Heffron*, 452 U.S. at 655, 101 S.Ct. 2559.

### 3. Designated Public Forum

■ A designated public forum is "property that the State has opened for expressive activity by part or all of the public." *International Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992). "The government does not create a public forum by inaction...." *See Cornelius*, 473 U.S. at 802, 105 S.Ct. 3439. Rather, only if the government has, by policy or practice, authorized First Amendment activity on its property, does it create a public forum by doing so. *See Perry*, 460 U.S. at 47, 103 S.Ct. 948.

■ Generally, regulations that restrict speech in a designated public forum are subject to the same standards of review as are regulations in a traditional public forum. *See id.* at 46, 103 S.Ct. 948.

The government may close a public forum that it has created by designation, though, so long as the reasons for closure are not content-based. *See Police Dep't of the City of Chicago v. Mosley,* 408 U.S. 92, 96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *see also Perry,* 460 U.S. at 46, 103 S.Ct. 948.

### 4. Nonpublic Forum

 Finally, property that does not fit either definition of a public forum is considered a nonpublic forum. The government may reserve the use of this property for its designated purpose. *See Perry,* 460 U.S. at 60, 103 S.Ct. 948. Regulations governing speech in nonpublic forum property need only be reasonable and will be upheld so long as they do not discriminate against speakers on the basis of their viewpoint. *See id.* at 60–61, 103 S.Ct. 948. A regulation is reasonable "when it is consistent with the [government's] legitimate interest in preserv[ing] the property ... for the use to which it is lawfully dedicated." *Lee,* 505 U.S. at 688, 112 S.Ct. 2701 (O'Connor, J., concurring) (internal quotations and citations omitted).

## III. Analysis

### A. Forum Status

 Plaintiffs have asked that I rule that § 232.1(h)(1) is unconstitutional on its face and enjoin the defendant from enforcing it at all exterior post office property nationally. In order to do so, I would have to decide whether all post office exterior property should be deemed a traditional public forum, a designated public forum or a nonpublic forum. I am unable to issue such a broad decision due to the lack of specific information about the property at issue.

Traditional public forum analysis requires that I assess the nature, use, and character of the property involved in the case to determine whether it has been held open to assembly and debate for time immemorial. *See Perry,* 460 U.S. at 45, 103 S.Ct. 948. Plaintiffs suggest that I may base my ruling on the historical evidence they have presented describing the nature

and use of post offices since the time the institution was founded. While not discounting the worth of that evidence to support the general proposition that post offices have traditionally served as community centers, that evidence provides me with no details about the actual use of any single, specific post office.

Lacking additional facts about all actual post offices, I cannot determine the history and nature of the uses of the exterior property about which plaintiffs request a ruling, and cannot engage in a full public forum analysis at all. *See Bjerke,* 796 F.2d at 648–49. It is therefore inappropriate to rule that § 232.1(h)(1) is unconstitutional at all post office locations given that such a determination requires a full public forum analysis. If I cannot define the forum status of the property, I cannot determine the appropriate level of scrutiny to which to subject § 232.1(h)(1). Because the record before me does not contain evidence sufficient to find that § 232.1(h)(1) is unconstitutional on its face or as applied to the plaintiffs, the plaintiffs' motion for summary judgment must be denied.

### B. Other Open Issues

 Even if this evidentiary roadblock did not prevent a decision on the forum issue, disposition of the case on the current record would still be inappropriate. If I were to assume, for the purpose of this decision, that exterior post office property as a whole is a traditional public forum and attempted to apply the time, place, and manner standard of review, the lack of evidence about the nature and normal activity at particular post office locations would preclude a conclusion about the reasonableness of § 232.1(h)(1) under that standard. "The crucial question [in assessing time, place and manner restrictions] is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned,* 408 U.S. at 116, 92 S.Ct. 2294. Without that kind of information,

such an assessment would be mere speculation.

In addition, the lack of description about the specific property at issue would prevent me from drawing a conclusion about whether § 232.1(h)(1) leaves open ample alternative channels of communication as well. An analysis of the physical configuration of the property is necessary to determine whether the plaintiffs can effectively communicate their message from other locations if they are excluded from USPS exterior property. On this issue, the record is also incomplete about the manner in which § 232.1(h)(1) is interpreted and applied. When asked at the motions hearing whether § 232.1(h)(1) would preclude plaintiffs from handing out literature directing interested individuals to a nearby public sidewalk to sign a petition regarding an initiative, the government was unable to say if that kind of behavior was prohibited under § 232.1(h)(1). I am thus unable to decide whether § 232.1(h)(1) allows the plaintiffs other methods by which to communicate their message on post office property or the extent to which such an exclusion would preclude their message entirely.

Without information to decide these questions, I could not determine that § 232.1(h)(1) will necessarily withstand scrutiny under the time, place, and manner standard of review. Because this insufficient record prevents me from finding that § 232.1(h)(1) will necessarily withstand any level of scrutiny, the defendant's motion for summary judgment also must be denied.

### C. Clear Issues

Notwithstanding the insufficiency of the record for summary judgment purposes, three issues are clear based on the record I do have. Because those issues will be relevant to the case as it proceeds, I discuss them here.

### 1. Content Neutrality

First, I find that § 232.1(h)(1) is content-neutral because it was not adopted based on a disagreement with the content of speech. *See Ward*, 491 U.S. at 791, 109 S.Ct. 2746. Plaintiffs argue that § 232.1(h)(1) is content-based because it prohibits gathering signatures for initiatives but does not prohibit gathering signatures for voter registration. The reasoning in *Hill* suggests otherwise.

In *Hill*, the Supreme Court examined a Colorado statute that prohibited speakers from knowingly approaching individuals for the purpose of engaging in "oral protest, education or counseling." *Hill*, 120 S.Ct. at 2485. The Court found that because that statute applied without drawing distinctions on the basis of the subject matter, the statute was content-neutral. *Id.* at 2491–92. Similarly, in this case, § 232.1(h)(1) does not prohibit speech based on its subject but rather on its purpose. A content-based regulation would prohibit collecting signatures for initiatives about certain subjects—for example, legalizing medical marijuana use—but not on other subjects. Section 232.1(h)(1) does not discriminate that way. Section 232.1(h)(1) applies to anyone who wishes to collect signatures on petitions, polls or surveys pertaining to any subject. Insofar as § 232.1(h)(1) "applies equally to used car salesmen, animal rights activists, fundraisers and missionaries," it is no more content-based than was the Colorado statute at issue in *Hill. Id.* at 2493.

### 2. Designated Public Forum Analysis

The determination that the regulation is content-neutral eliminates the need to decide a second issue, specifically, whether the property at issue is a designated public forum. Even if USPS designated exterior post office property as a public forum in which citizens were permitted to gather signatures for initiatives, USPS is permitted to close that designated public forum to such a use in the future, so long as the closure is not content-based. *See Mosley*, 408 U.S. at 96, 92 S.Ct. 2286. Because this is a content-neutral regulation, USPS is permitted to close this forum in this man-

ner. Therefore the only remaining forum status issue would be whether exterior post office property constitutes a traditional public forum or a nonpublic forum.

### 3. Nonpublic Forum Analysis

■ The third clear issue is that § 232.1(h)(1) would withstand the minimal level of scrutiny applicable to regulations in a nonpublic forum. The regulation is clearly viewpoint-neutral in that it does not restrict speech because of a disagreement with a particular point of view but rather applies to all viewpoints equally. *See Perry*, 460 U.S. at 46, 103 S.Ct. 948. Moreover, the regulation is reasonable in that it is consistent with USPS's need to preserve post office property for post office business. *See id.* at 46–47, 103 S.Ct. 948. Solicitation for signatures involves a signature gatherer stopping passersby entering the post office and confronting them with information and a request for a signature. While I do not question whether plaintiffs in this case engage in these interactions in nondisruptive fashion, the fact remains that a passerby must "listen, comprehend, decide and act" during the course of such an interaction. *Kokinda*, 497 U.S. at 734, 110 S.Ct. 3115 (plurality). USPS could reasonably decide that such activity interferes with post office business and decide they did not want their customers to be subject to that kind of encounter.

Plaintiffs argue that the government has failed to proffer sufficient evidence that gathering signatures actually disrupts post office business. This argument fails to take account of the fact that "[g]overnment need not wait until havoc is wreaked to restrict access to a nonpublic forum." *Cornelius*, 473 U.S. at 810, 105 S.Ct. 3439. In other words, USPS need not show actual disruption; it may show merely the reasonable expectation of disruption.

To support its contention that § 232.1(h)(1) is necessary, USPS offered the declaration of Frederick J. Hintenach, the Manager of Retail Operations Support, who is responsible for USPS standard operating policies and procedures. (Def.'s Mem.Ex. A.) Mr. Hintenach states that in

the ten years since he has held his position, "complaints from both customers and postal employees have surfaced nationwide about postal property use for solicitation and signature gathering activities that disturb and impede customers' usage of our postal facilities." (*Id.* at ¶ 4.) He represents that customers perceive this kind of activity as intimidating and intrusive. (*Id.* at ¶ 13.) Finally, Mr. Hintenach asserts that gathering signatures is an impediment to carrying out postal business. (*Id.* at ¶ 8.) These representations are sufficient to convince me that § 232.1(h)(1) is a reasonable effort by the government to manage its property in pursuit of its business. For these reasons, I find that if exterior post office property, or part of it, were found to be a nonpublic forum, § 232.1(h)(1) would have to be upheld.

## IV. Conclusion

Neither motion for summary judgment is supported by sufficient facts in the record to entitle the movant to judgment as a matter of law. Both motions will be denied. An appropriate order accompanies this memorandum opinion.

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is

ORDERED that the plaintiffs' Motion for Summary Judgment [9] be, and hereby is, DENIED. It is further

ORDERED that the defendant's Motion for Summary Judgment [5] be, and hereby is, DENIED. It is further

ORDERED that a status conference is scheduled for October 17, 2000 at 11:30 a.m. It is further

ORDERED that the parties shall meet and confer as directed by Local Civil Rule 16.3 and shall submit their Joint Meet and Confer Statement addressing all topics listed in that rule no later than five business days before the status conference.