AIR LINE PILOTS ASSOC., Plaintiff,

v.

FEDERAL EXPRESS CORP.,
Defendant.

No. CIV.A. 02–1881(RCL).

United States District Court,
District of Columbia.

March 30, 2004.

Marta Wagner, Airline Pilots Association, Legal Department, Herndon, VA, for Plaintiff.

Adrienne Anita Brown, Thomas Edward Reinert, Jr., Morgan, Lewis & Bockius, L.L.P., Washington, DC, for Defendant.

*MEMORANDUM OPINION*

LAMBERTH, District Judge.

Before the Court is the defendant's motion for summary judgment [12], requesting disposition in its favor and dismissal of the plaintiff's action pursuant to Fed.

R.Civ.P. 56(b), and the plaintiff's motion for summary judgment [11], requesting an order directing the defendant to arbitrate Grievance No. 02–03.

Upon consideration of the motions, the applicable law and the record in this case, the Court finds there are no genuine issues of material fact in dispute and that the defendant is entitled to judgment as a matter of law. Therefore, the Court will grant the defendant's Motion for Summary Judgment, deny the plaintiff's Motion for Summary Judgment, and dismiss the action.

## BACKGROUND

### I. Procedural History

On September 25, 2002, the plaintiff, the Air Line Pilots Association ("ALPA"), filed the instant action against the defendant, Federal Express Corporation ("FedEx"), pursuant to the Railway Labor Act ("RLA"), 45. U.S.C. § 151–188, seeking injunctive relief to compel arbitration of a dispute purportedly arising under the collective bargaining agreement ("Agreement") between the plaintiff and the defendant. After an extended period of discovery, both parties filed motions for summary judgment on August 15, 2003. Subsequent oppositions and replies were also filed by both parties.

### II. Undisputed Facts

Prior to the terrorist attacks on September 11, 2001, non-FedEx pilots ("offline pilots") had "jumpseat" privileges by way of industry practice and a "Reciprocal Jumpseat Agreement." On September 18, 2001, the government issued an order restricting cockpit jumpseat access to employees of an air carrier. See United States Department of Transportation Federal Aviation Administration, Subject: Threat to U.S. Aircraft Operators, Security Directive No. 108–01–03F (September 18, 2001). Soon thereafter, FedEx revoked both the cockpit jumpseat privileges as well as the "supernumerary jumpseat" privileges previously extended to offline pilots. "Supernumerary" jumpseats, jumpseats that are located outside of the cockpit, are at issue in this action. ALPA filed a grievance seeking arbitration of the issue of offline pilots' access to FedEx supernumerary jumpseats and an order reinstating jumpseat privileges for offline pilots. FedEx refused to process the grievance, maintaining that the issue of offline pilots' access to supernumerary jumpseats is nonarbitrable under the Agreement, and not otherwise covered by contract. At issue in the instant case is whether FedEx is required to arbitrate a grievance concerning the access of non-FedEx pilots to jumpseats on FedEx aircraft.

## APPLICABLE LAW

### I. Procedural

Pursuant to Fed.R.Civ.P. 56, summary judgment is appropriate when the motion papers, affidavits, and other submitted evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Whether a fact is "material" is determined in light of the applicable substantive law invoked by the action. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In light of the applicable substantive law, a "genuine issue of material fact" is a fact that is determinative of a claim or defense, and therefore, affects the outcome of the case. See Celotex, 477 U.S. at 322, 106 S.Ct. 2548; Anderson, 477 U.S. at 248, 106 S.Ct. 2505. Because the Court does not sit as a

fact-finder, it is precluded from weighing evidence or finding facts and must draw all inferences and resolve all doubts in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In the case of cross motions for summary judgment, the Court must consider each motion separately, with each movant bearing the burden of supporting its motion. *See Initiative and Referendum Institute v. U.S. Postal Serv.*, 116 F.Supp.2d 65, 69 (D.D.C.2000). Disposition by summary judgment is precluded when determination of a genuine issue of material fact might result in a reasonable jury returning a verdict in favor of the non-moving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Morgan v. Federal Home Loan Mortg. Corp.*, 328 F.3d 647, 651 (D.C.Cir.2003).

II. *Substantive*

■ An issue of substantive arbitrability—whether the parties' dispute involves subject matter that is within the ambit of the arbitration agreement—is to be decided by a court, not an arbitrator. *See AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Arbitrators are not vested with such power because their authority to resolve disputes exists only by virtue of the parties' advance agreement to submit themselves and certain subject matter to arbitration. *See AT & T*, 475 U.S. at 648–49, 106 S.Ct. 1415. Although doubts about the arbitrability of an issue should be resolved in favor of coverage, *see Northwest Airlines v. ALPA*, 808 F.2d 76, 82 (D.C.Cir.1987), a court may find that an issue is nonarbitrable when there is "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior &*

*Gulf Navigation Co.*, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

### JURISDICTION

■ This Court finds that is has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 over this action, which arises under the Railway Labor Act ("RLA"), 45. U.S.C. § 151–188. Moreover, the Court finds that it has jurisdiction to decide the instant matter pursuant to *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (holding that "compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty.").

### ANALYSIS

■ The Court finds that the language and negotiations history of the Agreement provide "positive assurance" that the Agreement is not susceptible to an interpretation that encompasses grievances on behalf of offline pilots for the following reasons.

The language of the Agreement unambiguously applies exclusively to pilots employed by FedEx. There are several provisions of the Agreement relevant to the instant matter and demonstrative of the Agreement's narrow applicability. First, § 21 of the Agreement, which governs the purpose and procedure of the System Board of Adjustment, states the Board's purpose as:

> adjusting and deciding grievances which arise under the terms of this Agreement and have been processed under Section 19 or Section 20 of this Agreement . . . .

*See* Agreement, § 21. Pursuant to the terms of this provision the plaintiff here must raise a grievance within § 20 in order for the grievance to be substantively

arbitrable. Section 20, which governs the grievance procedure, states that:

> Any pilot, group of pilots covered by this Agreement or the Association on behalf of which such pilot(s) who has a grievance concerning any action of the Company affecting the pilot(s) . . . .

*See* Agreement, § 20. Section 20 clearly makes grievances concerning an action of the company arbitrable by pilots or a group of pilots covered by the Agreement, or an association representing a group of "such" pilots. Section 20, in plain language, only makes grievances brought by "pilots" arbitrable. Given the clarity of the foregoing language, the Court need only look to the Agreement's definition of "pilot" to determine whom the Agreement covers. Upon doing so, it is plain to the Court that the Agreement only covers pilots employed by FedEx. *See* Agreement, § 2(49). Section 2(49) defines the term "pilot" as:

> "A Captain, First Officer or Second Officer covered by this Agreement, employed by the Company, and whose name appears on the Master Seniority List."

*See id.* Section 2(49) states three conjunctive requirements for a person constituting a pilot under the Agreement. Of particular, and decisive, relevance to the instant matter are the designations that a pilot is one "employed by the Company," and "whose name appears on the Master Seniority List." The "Company" as a matter of common sense, but more important, as a matter of definition is "Federal Express Corporation." Agreement, § 2(15). And, the "Master Seniority List" is "a list of all the pilots *employed by Federal Express* who have assigned to them a seniority number." *See* Davies Deposition at 29:18 (quoting Agreement, § 22) (emphasis added). Therefore, when one reaches the provision regarding jumpseat access, Article

26.J, the only conclusion to be drawn is that the plaintiff, an association representing non-FedEx pilots, cannot place a properly arbitrable issue before the grievance board. Specifically, when read with the appropriate text-derived modifiers, Article 26.J provides that:

> To the extent permitted by law or regulation, pilots [pilots employed by FedEx] shall be given access to Company [FedEx] jumpseats on terms no less favorable than those provided in the Company [FedEx] jumpseat policy effective January 25, 1998 and included in the PPB [Pilot Benefit Book].

*See* Agreement, Art. 26.J. Hence, the plain language of the Agreement clearly reveals that it is not susceptible to an interpretation that covers grievances filed by non-FedEx pilots.

The negotiations history also supports this conclusion. There are several classes of FedEx-employee pilots that were negotiated out of, or are otherwise not covered by the Agreement. For instance, corporate pilots were never covered by the Agreement because they did not meet the requirements of being on the Master Seniority List and holding a position as Captain, First Officer or Second Officer. Management pilots are not covered because although they may hold a seniority position, they never hold positions as Captains, First Officers or Second Officers. *See* Davies Deposition at 33:17–27. Given the language and negotiations history of the Agreement, there simply is no colorable argument that the plaintiff is covered by the subject matter of the Agreement.

■ Having found that the Agreement does not encompass non-FedEx pilots, the Court also finds that the Reciprocal Jumpseat Agreement, does not provide the plaintiff with a contractual basis for its asserted right to access supernumerary jumpseats. Focusing on Art. 26.J's

reference to the PPB, which contains the Reciprocal Jumpseat Agreement, the plaintiff maintains that the Reciprocal Jumpseat Agreement brings the grievances of offline pilots within the arbitrable subject matter covered by the Agreement. However, the plain reading of the Agreement as discussed, also disposes of this argument in favor of the defendant. As previously discussed, Art. 26.J refers to pilots who are FedEx employees. In so referring, Art. 26.J is textually limited to the interpretation that it refers to providing *FedEx pilots* with the same type of access to jumpseats that they were provided with by the January 25, 1998 jumpseat policy. The negotiations history also indicates that Art. 26.J was only intended to apply to FedEx pilots, *see* Davies Deposition at 84:10–18; Maliniak Deposition at 21:1–2, 12–14, given that the PPB and the Reciprocal Jumpseat Agreement included therein were not finalized until more than a year after the Agreement was ratified, *see* Maliniak Deposition at 67:1–5, and never incorporated into the Agreement. *Cf. Air Line Pilots Assoc. v. Delta Air Lines, Inc.*, 863 F.2d 87, 94 (D.C.Cir.1988) (finding that Delta had failed to offer positive assurance because "[s]ignifigantly, the agreement between Delta and ALPA provides that [other relevant plans] are incorporated by reference into the agreement.") Here, there is no such incorporation provision and, as the plaintiff admits, the Reciprocal Jumpseat Agreement is not contained in the Agreement.

### CONCLUSION

Upon review of Agreement, the grievance papers, related filings and circuit case law, the Court finds that there are no genuine issues of material fact in dispute. The Court also finds that the defendant is entitled to judgment as a matter of law; the judgment of the Court being that the dispute concerning non-FedEx pilots is nonarbitrable and that there is no contractual basis for a claim of jumpseat rights by non-FedEx pilots.

A separate Order shall issue this date.

### ORDER

For the reasons stated in the Memorandum Opinion, the Court hereby enters judgment for the defendant, and the case stands dismissed with prejudice.

SO ORDERED.