# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 10, 2005           Decided April 8, 2005

No. 04-7062

AIR LINE PILOTS ASSOCIATION,
APPELLANT

v.

FEDERAL EXPRESS CORPORATION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(02cv01881)

———

*Clay Warner* argued the cause for appellant. With him on
the briefs was *Marta Wagner.*

*Thomas E. Reinert, Jr.* argued the cause for appellee. With
him on the brief was *Adrienne A. Brown.*

Before: RANDOLPH, TATEL, and GARLAND, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: The union representing Federal
Express pilots -- the Air Line Pilots Association -- brought an
action to compel the company to arbitrate a grievance. On
cross-motions for summary judgment the district court ruled in

FedEx's favor, holding that the grievance was not arbitrable. 310 F. Supp. 2d 247 (D.D.C. 2004). The union's appeal is on the grounds that the district court misconstrued the collective bargaining agreement and misunderstood the nature of the grievance.

The FedEx Pilots Association, which represented the pilots until it merged with their current union in 2002, entered into a collective bargaining agreement with the company in 1999. As the Railway Labor Act required, 45 U.S.C. § 184, the agreement contained grievance and arbitration provisions. Section 20A of the agreement defined "grievances" as "disputes growing out of the interpretation or application of agreements between the parties hereto concerning rates of pay, rules or working conditions." Section 20A also stated: "Any pilot, group of pilots covered by this Agreement or the Association on behalf of such pilot(s) who has a grievance concerning any action of the Company affecting the pilot(s), except matters involving discipline, shall have such grievance handled in accordance with the following procedures," which are then spelled out in detail. If a grievance is not resolved to the union's satisfaction, the union may take it to arbitration before the Federal Express Pilots' System Board of Adjustment.

The grievance FedEx refused to arbitrate dealt with "jumpseating," the practice by which offline pilots travel without charge in available seats in an aircraft's cockpit, passenger cabin or cargo compartment. FedEx pilots had the option of jumpseating on FedEx aircraft. They also could jumpseat on other aircraft because of reciprocal jumpseat agreements between FedEx and other carriers. In light of the fact that many FedEx pilots reported to work far from their homes, they valued jumpseating.

The FedEx collective bargaining agreement addressed the subject: "To the extent permitted by law or regulation, pilots shall be given access to Company jumpseats on terms no less favorable than those provided in the Company jumpseat policy effective January 25, 1998 and included in the [Pilot Benefit Book].  Procedures for booking and other provisions governing access to Company jumpseats shall be as provided in that policy."  The Pilot Benefit Book mentioned in this provision stated that: "FedEx management, in conjunction with the FPA Jumpseat Committee, will enter into reciprocal jumpseat agreements with other . . . carriers on behalf of FedEx flight crew members.  FPA Jumpseat Committee shall have the opportunity to recommend additions, deletions or changes to the reciprocal agreements."

FedEx had been abiding by its reciprocal jumpseat agreements with other carriers.  Then, shortly after September 11, 2001, federal security directives prohibited offline jumpseaters from using cockpit seats.  Other carriers complied with the directives but still permitted offline pilots to jumpseat in passenger cabins and cargo compartments.  FedEx did not.  It decided that for security reasons, no pilot other than one working for FedEx could jumpseat on FedEx airplanes.  As a result, other carriers began denying FedEx pilots reciprocal jumpseat privileges on their aircraft.

In February 2002, the FedEx Pilots Association filed a grievance "on behalf of all FedEx pilots," complaining that the company's position on jumpseating conflicted with the collective bargaining agreement and that its "decision to unilaterally change the decades of past practice of allowing offline pilots access to Company jumpseats places the continued existence of our reciprocal jumpseat agreements in jeopardy."  FedEx refused to process the grievance on the ground that the "inability of non-Federal Express employees to use our

jumpseats is in no way related to the terms and conditions of employment" of the FedEx pilots.

Under the collective bargaining agreement, a refusal to process a grievance is considered a denial of the grievance. The FedEx Pilots Association therefore appealed to the System Board. FedEx responded in a letter stating that the System Board had no jurisdiction because the "inability of non-Federal Express employees to use Company jumpseats has in no way affected the pilots covered by the contract. Such jumpseat access has been a benefit only to individuals not employed by Federal Express and not represented by [the union], and the denial of jumpseats to those people is not a subject covered by the collective bargaining agreement or by the" Railway Labor Act.

In July 2002, the arbitrator assigned to the matter ruled that the grievance was within the jurisdiction of the System Board. Citing Supreme Court precedent, he had little "doubt that the jumpseat issue grew out of the grievances concerning the interpretation and application of the terms of the Agreement and a long-standing past practice and thereby fall within the terms of the Agreement. Thus, applying the presumption mandated by the Supreme Court, I have concluded that the System Board has jurisdiction to hear and decide this dispute." The arbitrator issued his decision "with the full knowledge that any ruling I make is not final and binding and that court action is required for enforcement if either party refuses to abide by the ruling."

By this time, the Air Line Pilots Association had taken over as the union representing the FedEx pilots. When FedEx refused to accept the arbitrator's decision, the union filed an action seeking to compel the company to arbitrate. On cross-motions for summary judgment, the district court ruled in favor of FedEx. It very much appears -- although we cannot be certain --

that the court believed the union was not the collective bargaining representative of the FedEx pilots and that it was pursuing the grievance on behalf of non-FedEx pilots. After reviewing provisions in the agreement the court concluded that it "only covers pilots employed by FedEx." 310 F. Supp. 2d at 250. The court then said: "the only conclusion to be drawn is that the plaintiff, an association representing non-FedEx pilots, cannot place a properly arbitrable issue before the grievance board," to which the court added "there simply is no colorable argument that the plaintiff is covered by the subject matter of the agreement." *Id.*

District courts may grant summary judgment without issuing an opinion. When they do explain their action, their explanation is entitled to respectful consideration. Still, appellate review of orders granting summary judgment is *de novo*, at least when the order does not rest on a determination of ultimate facts. *See Troy Corp. v. Browner*, 120 F.3d 277, 281 (D.C. Cir. 1997); WILLIAM W. SCHWARZER ET AL., THE ANALYSIS AND DECISION OF SUMMARY JUDGMENT MOTIONS 79-81(Federal Judicial Center 1991). Here, our independent examination of the case leads us to a conclusion opposed to the district court's.

We may prepare the ground this way. Section 20A of the contract permits only FedEx pilots and their collective bargaining representative to pursue grievances. If we agreed that the union was prosecuting this grievance on behalf of non-FedEx pilots we would therefore affirm. But there is no room for such an argument. True enough, the Air Line Pilots Association represents pilots working for companies other than FedEx. True also, non-FedEx pilots would benefit if the arbitration went in the union's favor -- they could resume jumpseating on FedEx planes. But neither circumstance changes the fact that the union filing this grievance did so on

behalf of FedEx pilots in order to preserve the benefits they received from the reciprocal jumpseat agreements. We know the grievance was filed on behalf of FedEx pilots because, at the time of filing, their exclusive bargaining agent was the FedEx Pilots Association, which represented only them. We know this as well from the grievance itself: "This grievance is filed by the [FedEx Pilots Association] on behalf of all FedEx pilots and the [FedEx Pilots Association]"; and "this grievance" seeks "to correct management's manner of dealing with the FedEx pilots and [the FedEx Pilots Association] with regard to jumpseat issues . . . ." We also must assume that a favorable resolution of the grievance would promote the interests of the FedEx pilots because they would again enjoy the privilege of traveling free of charge on the aircraft of other carriers who had reciprocal jumpseat agreements with FedEx. We must assume this because the union said so in its uncontested statement of material facts not in dispute. That the union's success in arbitration might also assist employees of other companies cannot make a difference on this question. No one would suppose that a grievance protesting a manufacturing company's decision to cease covering its employees with a medical insurance plan should be viewed as a grievance on behalf of the insurance company's employees who administered the plan.

This brings us to four well-settled points of the federal law governing the arbitrability of labor disputes. One, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986), *quoting United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Two, "[u]nless the parties clearly and unmistakably provide otherwise, the question . . . whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." 475 U.S. at 649. Three, "in deciding whether the parties have agreed

to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.* And four, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf Navigation*, 363 U.S. at 582-83.

We have already explained why we are satisfied that a proper party, as defined in the agreement, brought this grievance and why a proper party is pursuing it. We are also convinced that the grievance concerns a proper subject, as set forth in Section 20A of the agreement, quoted earlier. The jumpseat controversy grows out of a dispute over the meaning of contractual terms, among which is Section 26J.1, also quoted above. Whether Section 26J.1's reference to the Pilot Benefit Book had the effect of making the jumpseat provisions of the Book part of the collective bargaining agreement, as the union maintains, is one of the issues for the arbitrator. The agreement's provision governing arbitration, Section 21A, gives the System Board "jurisdiction over disputes between pilots or the Association and the Company growing out of grievances, or out of the interpretation or application of any of the terms of the Agreement . . . ." For the reasons already stated, we are far from positively convinced that this provision cannot be interpreted to cover the jumpseating dispute. No more is needed to order FedEx to arbitrate.

The judgment of the district court is reversed, and the case is remanded for the entry of an order compelling FedEx to arbitrate the jumpseat grievance.

*So ordered.*