# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 5, 2008        Decided March 6, 2009

No. 07-7136

ELLIOT WOLFF, PERSONALLY AND AS TRUSTEE OF THE TRUST
ESTABLISHED UNDER ARTICLE III OF THE ESTATE OF EGON
WOLFF,
APPELLANTS

v.

WESTWOOD MANAGEMENT, LLC, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 06cv01234)

———

*Leslie D. Alderman III* argued the cause and filed the briefs for appellants.

*Paul J. Kiernan* argued the cause and filed the brief for appellees.

Before: ROGERS, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: This case concerns the shelf-life of an arbitration provision in a superseded contract. Appellant Elliot Wolff sued Westwood Management LLC and various related individuals and entities for breach of fiduciary duties and derivative claims. The district court dismissed the complaint, concluding—over Wolff's vehement objections—that all of his claims were covered by a mandatory arbitration clause. Finding no error, we affirm.

I.

In 1971, Elliot Wolff's father, Egon, invested in a real estate venture—the District of Columbia Joint Venture (DCJV)—organized by Dr. Laszlo Tauber that developed a piece of District real estate into an office building complex known as the Transpoint building. For his $20,000 investment, Egon received an interest of 0.5% in the land and 0.25% in the building. The agreement Egon signed when he invested in the DCJV (DCJV Agreement) contained an arbitration clause, providing that "[t]he parties agree not to enter into any court action in any dispute which may arise during construction and management of the office building complex and agree that any dispute or controversy that cannot be amicably settled will be submitted to arbitration[.]"

Egon Wolff died in November 1984, and his interest in the DCJV passed to the appellants, Elliot Wolff and a trust established from Egon's estate. On December 6, 1984, Dr. Tauber wrote a letter to the DCJV investors, along with those who had invested in other ventures he had organized, informing them that his "long standing goal has been to merge all the partnerships into one single partnership. This

must be achieved now with no further delay." The letter made the merger "effective the 1st of January, 1985," and gave the investors four options: to sell their interest, to become a class "B" partner in the new entity, to become a class "C" partner in the new entity, or—for anyone who "ha[d] second thoughts and [wa]s not willing to cooperate"— to "put his/her interest in trust." The new entity, referred to as the Consolidated Partnership, was reorganized into various other entities over time.

Though the record is silent on this point, the parties agree Elliot Wolff declined to join the Consolidated Partnership. Wolff alleges he asked Dr. Tauber to hold his DCJV interest in trust. As a result, Wolff was not a party to the Consolidated Partnership agreement nor was he an owner of, or investor in, any of the successor entities. Rather, his ownership interest of 0.5% in the land and 0.25% in the building that made up the Transpoint Building complex, acquired via the DCJV Agreement, was held for him in trust by Dr. Tauber and his successors.

After Dr. Tauber died in 2002, management and control of all the ventures stemming from the Consolidated Partnership went to appellee Westwood Management. In February 2004, Westwood Management sold the Transpoint Building and the adjacent land and paid the investors. Wolff filed this lawsuit in 2006:

> alleging breach of fiduciary duty and derivative claims, all resulting from the management and sale of the Transpoint building and the adjacent lot. He alleges that defendants used funds from various mortgages and refinances of the Transpoint building and the adjacent lot for purposes other than for use

> by and for the Transpoint building and that adjacent lot; specifically, to make improvements to other properties and for defendants' enrichment.

*Wolff v. Westwood Mgmt.*, 503 F. Supp. 2d 274, 278 (D.D.C. 2007).

The district court granted defendants' motion to compel arbitration. In response to Wolff's argument that the DCJV Agreement and its arbitration clause were extinguished by the creation of the Consolidated Partnership, the district court concluded the agreement to arbitrate survived the expiration of the DCJV Agreement and applied to this dispute. *Id.* at 281. The district court reasoned "[t]he obligations at issue in this case can only have arisen from the DCJV Agreement because there was no other agreement with defendants that Wolff entered into." *Id.* The district court noted that if the arbitration clause was to be read broadly—"any dispute or controversy . . . will be submitted to arbitration"—then it encompasses all matters that touch upon the contract. *Id.* at 282. If read narrowly—"any dispute which may arise during construction and management of the office building complex"—then it covers only specified types of disputes. *Id.* The dispute at issue in this case was covered under either reading of the arbitration clause. *Id.* at 283. The court therefore concluded the parties had entered into a valid and enforceable arbitration agreement that covered the claims in this case, and dismissed the complaint. This appeal followed.

5

II.

The "determination that the parties have contractually bound themselves to arbitrate disputes—a determination involving interpretation of state law—is a legal conclusion subject to our *de novo* review, … but the findings upon which that conclusion is based are factual and thus may not be overturned unless clearly erroneous." *Bailey v. Fed. Nat'l Mortgage Ass'n*, 209 F.3d 740, 744 (D.C. Cir. 2000). Under District of Columbia law, "arbitration is predicated on the consent of the parties to a dispute, and the determination of whether the parties have consented to arbitrate is a matter to be determined by the courts on the basis of contracts between the parties." *Bailey*, 209 F.3d at 746; *see also Air Line Pilots Ass'n v. Fed. Express Corp.*, 402 F.3d 1245, 1248 (D.C. Cir. 2005).

"[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Air Line Pilots Ass'n*, 402 F.3d at 1248 (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960)). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Wolff contends the arbitration clause in the DCJV Agreement does not apply to this dispute because the agreement terminated in 1985. And, appellants argue, their

claims arise under the alleged trust; not the DCJV.  But, as the district court observed, "an arbitration clause is enforceable after the expiration of a contract when the dispute is over an obligation created by the contract."  *Wolff*, 503 F. Supp. 2d at 280.  We agree.

The Supreme Court has observed that "a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so.  Adherence to these principles, however, does not require us to hold that termination of a collective-bargaining agreement automatically extinguishes a party's duty to arbitrate grievances arising under the contract."  *Nolde Bros. v. Local No. 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 250–51 (1977).  "[E]ven though the parties could have so provided, there is nothing in the arbitration clause that expressly excludes from its operation a dispute which arises under the contract, but which is based on events that occur after its termination."  *Id.* at 252–53.  Moreover, the Court in *Nolde Bros.* found a "presumption in favor of postexpiration arbitration of matters unless 'negated expressly or by clear implication,' but that conclusion was limited by the vital qualification that arbitration was *of matters and disputes arising out of the relation governed by contract*."  *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991) (quoting and discussing *Nolde Bros.*, 430 U.S. at 255) (emphasis added).

With these principles in mind, it is easy to see the district court did not err when it held the "agreement to arbitrate manifested in the DCJV Agreement survives termination of the DCJV Agreement and that it applies to this controversy."  *Wolff*, 503 F. Supp. 2d at 281.  The claims in this case, after all, "can only have arisen from the DCJV Agreement because there was no other agreement with [appellees] that Wolff entered into."  *Id.*  Even assuming a valid trust was created

under District of Columbia law when the DCJV Agreement terminated in 1985, appellants' claims are "disputes arising out of the relation governed by the contract," *Litton Fin. Printing Div.*, 501 U.S. at 204, because the Wolffs' ownership interest in the land and the building—the *res* of the alleged trust—was created under the DCJV Agreement. We conclude that the agreement to arbitrate "any dispute which may arise during construction and management of the office building complex" survived the expiration of the DCJV Agreement and compels appellants to submit their claims to arbitration.

The remainder of appellants' arguments can be dismissed in short order. Appellants' unclean hands argument goes to the merits of their claims rather than their arbitrability. There is no allegation that appellees have unclean hands with respect to the agreement to arbitrate itself. "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Air Line Pilots Ass'n*, 402 F.3d at 1248; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (allegation of fraud in the inducement of a contract is arbitrable, at least absent a claim of fraud in the inducement of the agreement to arbitrate). The district court did not abuse its discretion in refusing appellants' request for discovery under Rule 56(f) of the Federal Rules of Civil Procedure. The appellants failed to demonstrate, both to the district court and on appeal, how discovery related to the merits of the claims would have assisted them in opposing the motion to compel arbitration. Appellants also argue that the DCJV Agreement's arbitration clause lacks sufficient detail as to the material terms of the agreement. This argument, which was not presented to the district court, is not properly before us. *See, e.g.*, *Albrecht v. Comm. on Employee Benefits of Fed. Reserve Employee Benefits Sys.*, 357 F.3d 62, 66 (D.C. Cir. 2004) (argument not

presented to the district court ordinarily waived on appeal); *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984) (same) (citing cases). The same is true of appellants' argument that the district court erred by dismissing this case rather than staying it under Section 3 of the Federal Arbitration Act; no one requested a stay from the district court.

## III.

Accordingly, the order of the district court compelling arbitration and dismissing the complaint is

*Affirmed.*